Lee Etta R. MITCHELL, Individually and as Personal Representative of the Estate of George David Mitchell, Deceased d/b/a Serenity Chapel, Appellant–Respondent,

v.

Barbara Mitchell STEVENSON, Annalou Freeman, and Wyrtis Mitchell, by her next friend, Annalou Freeman, Appellees–Petitioners.

No. 36A05–9505–CV–172.

Court of Appeals of Indiana.

Feb. 28, 1997.

Transfer Denied June 13, 1997.

Thomas D. Strodtman, Indianapolis, for Appellant–Respondent.

William C. Lloyd, Ferguson Ferguson & Lloyd, Bloomington, for Appellees–Petitioners.

## OPINION

SHARPNACK, Chief Judge.

Lee Etta Mitchell appeals the trial court's judgment in favor of the plaintiff-appellees, Barbara Mitchell Stevenson, Annalou Free-

man, and Wyrtis Mitchell (collectively "the Appellees"). This case arose when Lee Etta disinterred her husband's remains. Lee Etta raises six issues for our review which we consolidate and restate as:

1) whether the trial court erred in granting a motion to join additional parties;

2) whether the trial court erred in holding Lee Etta in contempt of court for violating prior court orders;

3) whether the trial court erred in determining that Lee Etta committed intentional infliction of emotional distress; and

4) whether the trial court erred in reserving Barbara's claims against Lee Etta.

We affirm in part and reverse in part.

■ The facts most favorable to the judgment follow.[1] On March 7, 1982, George David Mitchell ("the deceased") married his second wife, Lee Etta. Together, they operated a funeral home named Serenity Chapel until the deceased's death on December 17, 1989. In addition to his wife, the deceased was survived by his daughter from a previous marriage, Barbara, his mother, Wyrtis, and his sister, Annalou.

On August 6, 1991, Barbara filed an action alleging that Lee Etta had exerted undue influence over the deceased shortly before his death causing him to revoke a will which named Barbara as the primary beneficiary. Barbara also alleged that Lee Etta engaged in fraudulent conduct and abused her authority as the deceased's attorney-in-fact.

While this action initially focused on the distribution of the deceased's assets, Lee Etta's failure to maintain the grave site at Greenlawn Cemetery became an increasingly sensitive matter. For nearly four years after the deceased's death, Lee Etta refused to place a headstone upon the grave.

The trial court set a trial date for October 18, 1993; however, the parties negotiated a settlement agreement on the morning of the trial. According to the settlement, Lee Etta agreed to pay Barbara $60,000 in two equal installments. In addition, Barbara was given primary responsibility for the deceased's grave and entitled "to purchase, place, and then be allowed to maintain a monument upon the grave site...."[2] Record, p. 18. The settlement agreement was then recited in open court. After which, the trial court placed the parties under oath and questioned them individually regarding their understanding of the agreement as well as their desire to enter into the agreement. Later, the court entered an agreed judgment order which memorialized the settlement agreement.

Pursuant to the agreement, Barbara placed a headstone on the deceased's grave. However, about one week after reaching the agreement, Lee Etta secretly applied for a permit from the Indiana Department of Health to disinter the deceased's remains. According to the application, Lee Etta intended to cremate the deceased and scatter his remains at sea. Although such a procedure was contrary to the deceased's intentions, Lee Etta never revealed to Barbara that she had obtained the disinterment permit. Lee Etta later admitted that her decision to disinter the deceased's remains was motivated by the "result of the hearing and will contest." Record, p. 411.

On January 4, 1994, Barbara filed a verified petition to show cause for indirect contempt, primarily alleging that Lee Etta had failed to make payments pursuant to the agreed judgement order. After conducting an evidentiary hearing on the petition, the trial court entered an order on March 17, 1994, finding Lee Etta in contempt for acting "maliciously, in bad faith, and with ill will

---

1. We note that Lee Etta's statement of the facts does not follow a narrative format as required by Ind. Appellate Rule 8.3(A)(5). *See Nehi Beverage Co. v. Petri*, 537 N.E.2d 78, 82 (Ind.Ct.App.1989), *trans. denied*. Instead, it merely consists of a lengthy description of the witnesses' trial testimony. We have stated repeatedly that a summary of the witnesses' testimony is not a statement of the facts within the meaning of the appellate rules. *See Hoover v. State*, 582 N.E.2d

403, 405 n. 1 (Ind.Ct.App.1991), *opinion adopted*, 589 N.E.2d 243 (Ind.1992). Despite Lee Etta's failure to comply with the appellate rules, we will address the merits of the issues before us.

2. The trial court later redacted from the agreement Barbara's right to be primarily responsible for the grave.

toward the plaintiff and in violation of the Court's Orders and contrary to the Agreed Judgment entered herein...." Record, p. 9. The trial court appointed two commissioners to secure sufficient funds from Lee Etta to satisfy the settlement payments. In addition, the court awarded to Barbara punitive damages of $5,000, attorney fees of $5,601, and damages for wage loss and mileage expense incurred of $195. The court also ordered a ninety day jail sentence, but suspended the sentence on the condition that Lee Etta purge the contempt by complying with all prior and contemporaneous orders. On April 25, 1994, Lee Etta made a $76,-770.65 payment, satisfying her money payment obligations under the agreed judgment order and the order of March 17, 1994.

However, in May of 1994, Lee Etta disinterred the deceased's remains from Greenlawn Cemetery and moved them to Brown County Memorial Park without notifying the trial court or the Appellees. In addition, Lee Etta took the headstone which Barbara had placed upon the deceased's grave and hid it in her funeral home. Lee Etta placed a different headstone on the deceased's grave at Brown County. Lee Etta later admitted that the new headstone was "a second hand monument," which bore the name of it previous owner on its underside. Record, pp. 552–554.

On May 28, 1994, Wyrtis and Annalou went to Greenlawn Cemetery to decorate the deceased's grave and pay their respects as part of a Memorial Day tradition. They were particularly interested in seeing the new headstone which Barbara had placed upon the grave. When they arrived at the grave site, they discovered that the grave had been desecrated and the headstone had been removed. As a result, Wyrtis and Annalou suffered extreme emotional trauma. When Barbara learned that her father's remains had been disinterred, she also experienced emotional distress and had complications with her pregnancy.

On June 7, 1994, Barbara filed a motion requesting that the trial court allow Wyrtis and Annalou to join the action against Lee Etta, which was granted. On July 14, 1994, the Appellees filed a petition to "enforce the prior orders of this court, for declaratory and equitable relief, injunction, and damages." Record, p. 77. In their petition, the Appellees alleged that Lee Etta had failed to comply with prior court orders and committed tortious acts which caused them emotional distress.

On October 24, 1994, the trial court conducted a bench trial in which both parties presented evidence. On December 30, 1994, the trial court issued its findings of fact and conclusions thereon. In a single judgment, the court held Lee Etta in contempt of court and found that she committed intentional infliction of emotional distress. However, the trial court later entered two separate judgments which vacated its original order. Essentially, the court retained the findings and conclusions of its original order, but separated the contempt charge and tort action into two separate judgments.

In its first judgment, entitled "Order on Motion to Reconsider Finding of Contempt of Court" ("contempt judgment"), the court sentenced Lee Etta to ninety days in jail for contempt of court. In addition, the court awarded the Appellees attorney's fees and expenses.

In its second judgment, entitled "Amended Findings of Fact, Conclusions of Law, Order, and Judgment Following Trial on the Request for Declaratory and Equitable Relief, Injunction and Damages Filed by Plaintiffs–Petitioner" ("tort judgment"), the trial court found that Lee Etta committed intentional infliction of emotional distress and awarded the Appellees damages. The trial court awarded Wyrtis and Annalou compensatory damages in the amount of $75,000 each. In addition, the court awarded Barbara $50,000 in compensatory damages and $3,000 for the stolen headstone. Collectively, the court awarded the Appellees $150,000 in punitive damages to be divided equally as well as attorney's fees and expenses. As a final matter, the trial court reserved Barbara's original claims of fraud and breach of fiduciary duty against Lee Etta even though these claims had been settled in the agreed judgment order.

On appeal, Lee Etta requests that we overturn both the trial court's contempt judgment and tort judgment. Although Lee Etta raises a number of convoluted, repetitive issues in her brief, her arguments essentially amount to four challenges. In our discussion, we will address each challenge in turn.

I.

The first issue raised for our review is whether the trial court erred in allowing Wyrtis and Annalou to join Barbara's action. Lee Etta argues that the court improperly permitted "two previously disinterested parties into a previously disposed of case." Appellant's brief, p. 22. However, we need not reach the merits of this argument because we find that Lee Etta has waived review of this issue on appeal.

Ind. Trial Rule 21(A) governs the misjoinder of parties, which provides in part:

"Misjoinder of parties is not ground for dismissal of an action.... Subject to the sound discretion and on motion of any party or of its own initiative, the court may order parties dropped or added at any stage of the action and on such terms as are just and will avoid delay."

T.R. 21(A). Pursuant to this rule, when a party contends that joinder is inappropriate, he must timely move to drop those individuals as improperly joined parties. *McCoy v. Like,* 511 N.E.2d 501, 507 (Ind.Ct.App.1987), *reh'g denied, trans. denied; see United of Omaha v. Hieber,* 653 N.E.2d 83, 87 (Ind.Ct. App.1995), *reh'g denied, trans. denied.* A misjoinder motion is untimely when filed after the culmination of trial, resulting in a waiver of any objection for review. *Celanese Corp. v. Vandalia Warehouse Corp.,* 424 F.2d 1176, 1179 (7th Cir.1970).

Here, the record reveals that Lee Etta's motion was untimely. Initially, on March 17, 1994, the court issued its order finding Lee Etta in contempt. The court sentenced Lee Etta to ninety days in jail, but suspended the sentence on the condition that she purge the contempt by complying with the court's orders. On May 28, 1994, Wyrtis and Annalou suffered emotional distress when they discovered that Lee Etta had disinterred the deceased and had taken the headstone. On June 7, 1994, Barbara moved to join Wyrtis and Annalou to her action as well as to permit them to file a subsequent petition. The court later granted this motion. On July 14, 1994, the Appellees filed a petition alleging that Lee Etta had failed to comply with prior court orders and committed tortious conduct.

Lee Etta did not respond to the petition until September 2, 1994, when she filed her motion to strike Wyrtis and Annalou as joined parties. However, on September 8, 1994, Lee Etta withdrew her motion to strike because her counsel "was not aware of a previous Court Order entered in this matter on June 20, 1994 permitting the joinder of additional parties." Lee Etta took no further action until the start of the bench trial on October 24, 1994. In open court, Lee Etta's counsel moved for the trial court to reconsider its order joining additional parties and then proceeded to argue the merits of this motion during his opening statement. However, the trial court permitted Wyrtis and Annalou to remain in the proceedings, but reserved ruling on joinder until its final order.

On February 10, 1995, the trial court issued its findings of facts and conclusions thereon. In its tort judgment, the trial court found:

"45. [Lee Etta's] first Motion to reconsider, filed on the day of trial, the Court's decision to allow the joinder of [Annalou] and Wyrtis Mitchell is DENIED for the reason stated herein and for the reasons, factual and legal, set forth in the briefs and memorandum filed by the [Appellees] in this cause, all of which are specifically incorporated herein by reference.

46. As noted above, [Lee Etta] filed a Motion to Strike Names of Additional Parties on or about September 2, 1994, and then later withdrew the motion on or about September 8, 1994. Presentation of the issue on the first day of trial after affirmatively withdrawing the issue in an untimely act. Therefore, the issue of joinder as

framed and presented by [Lee Etta] must be deemed to have been waived."

Record, pp. 343–344.

▪ Here, after Lee Etta initially withdrew her motion to strike Wyrtis and Annalou as improperly joined parties, she did not reinitiate this motion until the commencement of trial. Because Lee Etta waited until the start of trial to move for misjoinder of parties, her motion was untimely and, as a result, she has waived any objection concerning this issue. *See Celanese*, 424 F.2d at 1179. Accordingly, we need not address the merits of her argument.[3]

In addition, Lee Etta raises two procedural issues on appeal, which we will briefly address. First, Lee Etta argues that the trial court erred in granting Barbara's motion to join additional parties on the ground that the proceeding was conducted *ex parte*. However, the record reflects that this issue was not presented to the trial court. In her misjoinder motion, Lee Etta maintained that the court did not have jurisdiction, but failed to argue that joinder was improper on the ground that the proceeding was conducted *ex parte*. Moreover, Lee Etta's counsel did not raise the *ex parte* issue at trial.

▪ A party may not raise an issue on appeal which was not first presented to the trial court. *Blairex Lab., Inc. v. Clobes*, 599 N.E.2d 233, 237 (Ind.Ct.App.1992), *trans. denied*. When an issue is not raised before the trial court, it is waived for review. *Knaus v. York*, 586 N.E.2d 909, 912 (Ind.Ct.App.1992). Accordingly, because Lee Etta failed to present the *ex parte* objection to the trial court, she has waived it for review. *See id.*

▪ Second, Lee Etta argues that the trial court erred in joining additional parties to the action on the ground that the court improperly modified previous orders. Again, the record indicates that this objection was never presented to the trial court and is now

being raised for the first time on appeal. Accordingly, because Lee Etta did not present this objection to the trial court, she has also waived this issue for our review. *See id.*

## II.

The second issue raised for our review is whether the trial court erred in holding Lee Etta in contempt for violating prior court orders. Lee Etta raises three challenges to the trial court's contempt judgment, which we will address in turn.

### A.

First, Lee Etta argues that the trial court erroneously found that her misconduct was contemptuous. Specifically, she maintains her actions were "not in violation of a preexisting court order." Appellant's brief, p. 24.

▪ Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender had notice. *Andrews v. State*, 505 N.E.2d 815, 830 (Ind.Ct.App. 1987). Indirect contempt arises from conduct which does not occur in the presence of the court, including the failure of a party to obey a court order. *Davis v. State*, 608 N.E.2d 995, 996 (Ind.Ct.App.1993). Ind. Code § 34–4–7–3 governs indirect contempt for disobeying a court order and provides in part:

> "Every person who shall be guilty of any wilful disobedience of any process, or any order lawfully issued by the court of record ... after the same shall have been served upon him, shall be guilty of indirect contempt of the court from which such process or order shall have issued."

▪ The determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court. *Jackson v. State*, 644 N.E.2d 607, 608 (Ind.Ct.App. 1994), *trans. denied*. We will only reverse the trial court's determination if the court

---

3. We note that Lee Etta makes a passing reference in her brief concerning fundamental rights. Specifically, she maintains, "Annalou Freeman and Wyrtis Mitchell should not be allowed to join a five year old, adjudicated matter in an entirely new proceeding alleging [sic] violation of a prior order. To do so would be to violate Lee Etta's fundamental due process rights contained in the

U.S. and Indiana Constitutions." However, Lee Etta fails to develop this contention and to cite any authority. Pursuant to App.R. 8.3(A)(7), Lee Etta has waived this issue because she has failed to provide a cogent argument with adequate citation to authority. *See Keller v. State*, 549 N.E.2d 372, 373 (Ind.1990).

has abused its discretion. *Id.* A court has abused its discretion when its decision is against the logic and effect of the circumstances. *Id.*

Here, the trial court found that Lee Etta violated the agreed judgment order by removing Barbara's headstone from the deceased's grave.[4] The agreed judgment order provided that Barbara "shall be entitled to purchase, place, and then be allowed to maintain a monument upon the grave site of her father...." Record, p. 18.

■ There is no dispute that Lee Etta had notice of this order and that she, in fact, removed the headstone. Lee Etta's conduct contravened the agreed judgment order by interfering with Barbara's right "to maintain a monument upon the grave site." Record, p. 18. Therefore, Lee Etta willfully disobeyed this lawfully entered court order. *See Andrews,* 505 N.E.2d at 830. Accordingly, the trial court did not abuse its discretion in holding Lee Etta in indirect contempt of court. *See Jackson,* 644 N.E.2d at 608.

### B.

Next, Lee Etta argues that the trial court did not follow the proper procedure for the contempt proceeding. Lee Etta places great emphasis on the category in which her contempt should be placed. Specifically, Lee challenges the trial court's classification of her misconduct as civil contempt rather than criminal contempt.

In its contempt judgment, the trial court stated:

"70. [Lee Etta] contends that imposition of a ninety-day term of incarceration ... is in fact a finding of criminal contempt rather than civil contempt. As a result, [Lee Etta] concludes that the Court erred in making such a finding and entering a corresponding order of incarceration because the Court should have named a panel of potential judges to conduct further proceedings on the charge of contempt of

court and the charge should have been filed as a separate, independent action to be prosecuted by the State. [Lee Etta's] arguments appear to be based largely upon the Court's decision to impose a term of incarceration in connection with its finding of contempt of court.

71. [Lee Etta] again is mistaken. A charge of civil contempt is not automatically converted to a charge of criminal contempt merely because a court imposes a term of incarceration in connection with its finding of contempt of court.

72. Moreover, imposition of a ninety-day term of incarceration in this cause is not at all unreasonable as the following findings of fact and conclusions of law indicate. This is a case involving blatant disregard for the Court's ability to enforce its orders. It is important to note that, in March of 1994, the Court found [Lee Etta] to be in contempt of court for violating the Agreed Judgment Order and that the Court imposed a suspended term of incarceration with the understanding that [Lee Etta] would purge herself of that contempt by taking certain action. Then, only a relatively short time thereafter, [Lee Etta] again disobeyed the Court's order and engaged in further contemptuous conduct, all as found and concluded herein. Like the noncustodial parent who refuses to pay child support after appearing in court time and time again, simply because he or she does not like the Court's child support order, [Lee Etta] must be encouraged to comply with the Court's past and present orders. Otherwise, this litigation will never end, and the judicial system will have failed all parties involved."

Record, pp. 316–317.

■ Contempt proceedings are *sui generis,* neither civil nor criminal in nature, even though both of those labels are used to describe certain categories of contempt. *Walaschek & Assocs., Inc. v. Crow,* 733 F.2d

---

4. Lee Etta contends that she was held in contempt because she disinterred the deceased's remains. Specifically, Lee Etta argues that "she cannot be in contempt for failing to obey a court order forbidding her from disinterring her husband's remains when there was no order regard-

ing disinterment." Appellant's brief, p. 25 (original emphasis). Such an argument, if true, might be grounds for a reversal. However, in its contempt judgment, the trial court clearly held Lee Etta in contempt for removing the headstone from the deceased's grave.

51, 53 (7th Cir.1984); *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind.1990). Because both civil and criminal contempts can arise out of the same conduct, these categories of contempts are not readily distinguishable. *Heltzel*, 552 N.E.2d at 33. Generally, contempts have been categorized by the nature and purpose of the sanction imposed. *International Union, UMWA v. Bagwell*, 512 U.S. 821, 826–28, 114 S.Ct. 2552, 2557–2558, 129 L.Ed.2d 642 (1994).

A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. *National Educ. Ass'n v. South Bend Community Sch. Corp.*, 655 N.E.2d 516, 522 (Ind.Ct.App.1995); *Pickett v. Pelican Serv. Assocs.*, 495 N.E.2d 245, 246 (Ind.App.Ct.1986), *reh'g denied.* As such, any type of penalty in a civil contempt proceeding must be coercive or remedial in nature. *National Educ. Ass'n*, 655 N.E.2d at 522; *Moody v. Moody*, 565 N.E.2d 388, 390 (Ind.Ct.App.1991). In contrast, a criminal contempt is an act directed against the authority of the court which obstructs the administration of justice and which tends to bring the court into disrepute. *Heltzel*, 552 N.E.2d at 34. Thus, any type of penalty is punitive in nature because its purpose is to vindicate the authority of the court and it benefits the State rather than the aggrieved party. *Bagwell*, 512 U.S. at 826–28, 114 S.Ct. at 2557–2558, 129 L.Ed.2d at 652; *Duemling v. Fort Wayne Community Concerts, Inc.*, 243 Ind. 521, 524–525, 188 N.E.2d 274, 276 (1963).

The disobedience of a court order may be categorized as either civil contempt or criminal contempt. *Denny v. State*, 203 Ind. 682, 694–695, 182 N.E. 313, 317 (1932). Whether the conduct is categorized as civil contempt or criminal, the trial court must still provide the defendant the same statutorily prescribed due process protections. *See id.* at 696, 182 N.E. at 318; *Bechtel v. Bechtel*, 536 N.E.2d 1053, 1057 (Ind.Ct.App.1989) (Miller, J., concurring).

An indirect contempt, which is at issue here, requires an array of due process protections, including notice and the opportunity to be heard. *In re Nasser*, 644 N.E.2d

93, 95 (Ind.1994) (citing I.C. §§ 34–4–7–8, 34–4–7–9, 34–4–8–1). The rule to show cause is governed by I.C. § 34–4–7–8, which provides in part:

"In all cases of indirect contempts, the person charged therewith shall be entitled, before answering thereto, or being punished therefor, to have served upon him a rule of the court, against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt; and shall specify the time and place of such facts with such reasonable certainty, as to inform the defendant with the nature and circumstances of the charges against him; and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished for such contempt, which time the court shall, on proper showing, extend so as to give the defendant a reasonable and just opportunity to purge himself of such contempt."

Essentially, this rule fulfills the due process requirement that a contemptor be provided with adequate notice and an opportunity to be heard. *National Educ. Ass'n*, 655 N.E.2d at 522; *see Bottoms v. B & M Coal Corp.*, 405 N.E.2d 82, 94 (Ind.Ct.App. 1980). However, when a party admits to committing the alleged contemptuous acts, he cannot later complain that his substantial rights were violated due to improper notice. *See Smoot v. Smoot*, 604 N.E.2d 618, 625 (Ind.Ct.App.1992) (holding that a party cannot complain of an error in the issuance of the rule to show cause after already admitting that he committed the contemptuous activities), *trans. denied; see also National Educ. Ass'n*, 655 N.E.2d at 521 (holding that a party cannot complain, on appeal, of insufficient notice of the contemptuous acts when the party "acknowledged that the contemptuous acts had been sufficiently identified").

The record indicates that prior to the trial on October 24, 1994, the court did not issue a rule to show cause. Although this error violates the procedural safeguards set out in I.C. § 34–4–7–8, we find that Lee Etta's substantial rights were not violated because she had notice of the contempt

charge and later admitted, prior to the start of trial, to having committed the contemptuous acts. *See Smoot,* 604 N.E.2d at 625.

On July 14, 1994, the Appellees filed their petition which alleged that Lee Etta had failed to comply with prior court orders. The petition requested that the court hold Lee Etta in contempt for removing Barbara's headstone from the deceased's grave. On August 1, 1994, the trial court set a hearing to resolve this matter. Prior to the hearing, Lee Etta filed a response to the Appellees' petition in which she admitted to having removed Barbara's headstone from the deceased's grave, but denied that her conduct violated a previous court order. As such, Lee Etta not only had notice of the impending contempt proceeding, but she also admitted to the activities that formed the basis of the contempt charge. Thus, Lee Etta cannot now claim that her substantial rights were violated on the ground that she was not properly notified. *See id.*

In this case, the ninety day confinement imposed on Lee Etta is more in the nature of a criminal sanction for her persistent contemptuous conduct because there was no way for her to purge herself of contempt. However, the imposition of the sentence would also have some potential for coercion of Lee Etta's compliance with the requirements of the tort judgment of February 10, 1995, which included her cooperation in the reinterment of the deceased and accounting for the operation of the funeral home. The categorization of Lee Etta's conduct as civil contempt rather than criminal contempt does not alter the fact that she received the requisite due process protections.[5] *See Denny,* 203 Ind. at 696, 182 N.E. at 318. Therefore, no matter under which category Lee Etta's contemptuous acts fall, the trial court did not violate due process. *See id.* Accordingly, we cannot say that the trial court abused its discretion in finding Lee Etta in contempt. *See Jackson,* 644 N.E.2d at 608.

5. We note that the due process requirements for indirect contempt proceedings are also governed by I.C. § 34–4–7–9, which sets out the procedure for the proceedings, decision, and appeal of the contempt charge, and by I.C. § 34–4–8–1, which sets out the procedure for selecting a special

### C.

Lastly, Lee Etta argues that the trial court erred in awarding attorney's fees for her contempt. However, we need not reach the merits of this argument because Lee Etta has waived the issue for review.

A party may not raise an issue for the first time either in a motion to correct errors or on appeal. *Evans v. Tuttle,* 645 N.E.2d 1119, 1121 (Ind.Ct.App.1995). When a party fails to respond to a motion for award of attorney fees after receiving ample time to do so, the party cannot later challenge the award. *Id.* Instead, the party waives review of this issue by not presenting to the trial court any evidence or argument to the contrary. *Id.*

Here, the record indicates that Lee Etta did not present any evidence or argument challenging the Appellees' request for attorney's fees. Therefore, we need not reach the merits of Lee Etta's argument because she has waived review of this issue. *See id.*

### III.

The third issue raised for our review is whether the trial court erred in determining that Lee Etta committed intentional infliction of emotional distress. Lee Etta raises three challenges with respect to this issue, which we will address in turn.

### A.

First, Lee Etta argues that the trial court's judgment was erroneous because it was based upon issues that were not presented in the Appellees' petition. Specifically, Lee Etta contends the trial court's "findings and order created entirely new theories of the case not contained in the original petition." Appellant's brief, pp. 39–40 (citation omitted).

While a trial court has broad discretion in framing its orders so that the relief

judge to preside over the contempt proceedings. *See Andrews,* 505 N.E.2d at 830 n. 7. However, these statutes are inapplicable to the present case because Lee Etta willfully disobeyed a court order. *See Smoot,* 604 N.E.2d at 625.

conforms to the circumstances of each particular case, its discretion is limited to relief based on the issues presented. *Brademas v. Hartwig,* 175 Ind.App. 4, 10, 369 N.E.2d 954, 958 (1977). When a judgment does not conform to the pleadings, it is beyond the jurisdiction of the trial court and, therefore, void. *See Holmes v. Randolph,* 610 N.E.2d 839, 843–844 n. 11 (Ind.1993).

On July 14, 1994, after Lee Etta had disinterred the deceased's remains, the Appellees filed a petition seeking damages for their emotional distress. In their petition, the Appellees raised a number of tortious claims and remedies as follows:

"4. On Saturday, May 28, 1994, Wyrtis Mitchell and Annalou Freeman made preparation for and did visit the gravesite of [the deceased] at the Greenlawn Cemetery as a part of the Memorial Day remembrance and recognition.

To their immediate shock and painful anguish upon their arrival at the gravesite, they found the grave had been totally violated and destroyed.

After a search and investigation, on Sunday, May 29, 1994, the family located what appeared to be the new gravesite of [the deceased] at another cemetery known as Brown County Memorial Park. These discoveries were reported to Barbara Mitchell Stevenson and caused her shock and anguish over the continuation of such unrelenting and wrongful conduct by Respondent.

5. This violation and destruction of the gravesite, the disinterment of [the deceased], and the unauthorized conversion and removal of the monument purchased by Barbara Mitchell Stevenson, are believed to be done at the instigation and/or under the direction of Lee Etta R. Mitchell, and all of this conduct by Lee Etta R. Mitchell was done with no just cause and in a manner without even a courtesy notification of any kind, or any respectful consideration for the family and this Court.

\* \* \* \* \*

7. Your Petitioners assert that the tortious and continuing conduct of the Respondent constitutes a clear breach of Lee Etta R. Mitchell's applicable personal and fiduciary duties including the duties arising from the Orders of this Court, and said tortious conduct foreseeably [sic] and proximately continues to cause great anguish, pain, and suffering to each of your Petitioners.

\* \* \* \* \*

8. Your Petitioners assert that the continuing tortious acts and omissions by the Respondent greatly compound the previous harm considered in these proceedings and said conduct may be variously described and characterized as constituting bad faith, deception, fraud, negligence, and/or gross negligence, willful, wanton, malicious, intentional, outrageous, and/or criminal conduct all as by law defined and for which law and equity provide compensatory and punitive damages, particularly in view that this continuing conduct has no apparent end notwithstanding all the prior proceedings and Orders in this cause.

9. Your Petitioners further respectfully request ... that appropriate compensatory and punitive damages be awarded, together with reasonable attorney fees and the cost of this action."

Record, pp. 78–81.

After a bench trial, the court issued its tort judgment on February 10, 1995. In its judgment, the trial court stated:

"99. There is a wilful and deliberate failure of [Lee Etta] to abide by the settlement agreement and the Agreed Judgment Order which is a material breach of the contractual settlement and which also constitutes independent tortious conduct that is *accurately described* as bad faith, fraudulent, oppressive, malicious, and constitutes extreme and outrageous conduct designed to intentionally, recklessly, expectedly, and proximately cause severe emotional distress and harm to each of the Plaintiffs–Petitioners.

100. Considering the independent tortious harm caused each of the Plaintiff-Petitioners from [Lee Etta's] disinterment of [the deceased] and the related activities

regarding the grave site and monument done immediately preceding Memorial Day, and considering the Plaintiffs–Petitioners' good faith efforts to resolve matters and provide a peace, recognition, and repose with dignity to be accorded the deceased, the Court finds and declares compensatory and punitive damages are merited for the Plaintiff–Petitioners...."

Record, pp. 360–361 (emphasis added).

As the order indicates, the trial court did not create "entirely new theories of the case," as Lee Etta suggests, but rather, expressly relied on the claims and remedies raised in the Appellees' petition. Accordingly, we hold that the trial court's judgment properly conformed to the claims and remedies as presented in the Appellees' petition. *See Brademas,* 175 Ind.App. at 10, 369 N.E.2d at 958.

### B.

Next, Lee Etta argues that the evidence does not support the trial court's finding that she committed the tortious acts. Specifically, she contends that "[a]ssuming ... that [Barbara's] additional cause(s) of action (may have been) based upon an intentional infliction of emotional distress theory of recovery[,] there is absolutely no evidence to support their contention." Appellant's brief, p. 45 (original emphasis).

■ When we review a trial court's findings, we apply a two tiered standard of review. *W & W Equip. Co. v. Mink,* 568 N.E.2d 564, 569 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* First, we consider whether the evidence supports the findings. *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994), *reh'g denied.* Findings are set aside only if they are clearly erroneous. *Id.* In determining whether findings are clearly erroneous, we consider only the evidence which supports the judgment. *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994). Findings are clearly erroneous only when the record does not contain any facts to support them either directly or by inference. *Reasor,* 635 N.E.2d at 158.

After we conclude that the evidence supports the findings, we next determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Estate of Banko v. National City Bank,* 622 N.E.2d 476, 481 (Ind.1993), *reh'g denied.* Instead, we consider only the evidence which supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

■ In *Cullison v. Medley,* our supreme court adopted the tort of intentional infliction of emotional distress and described it as, "extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another." *Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind.1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)); *see Watters v. Dinn,* 633 N.E.2d 280, 292 (Ind.Ct.App.1994), *trans. denied.* The tort is based upon the intent to cause another emotional harm. *Cullison,* 570 N.E.2d at 31; *see Mullen v. Cogdell,* 643 N.E.2d 390, 402 (Ind.Ct.App.1994) (stating that this tort applies in cases that involve "the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance"), *reh'g denied, trans. denied.*

■ The record reveals that on October 18, 1993, Lee Etta negotiated a settlement which gave Barbara primary responsibility for the deceased's grave, including the right to place a headstone on the grave. However, only a week after signing this agreement, Lee Etta applied for a permit from the Indiana Department of Health to disinter the deceased's remains. The application indicated that Lee Etta intended to cremate the deceased and to scatter his remains at sea. Although such a procedure would have been contrary to the deceased's intentions, Lee Etta did not inform the Appellees of her plan to disinter the deceased's remains. Lee Etta testified that her primary motivation for disinterring the deceased's remains was "a result of the hearing and will contest." Record, p. 411.

In May of 1994, Lee Etta disinterred the deceased's remains and removed the headstone, even though she knew that the Appellees customarily decorated the deceased's grave on Memorial Day. When Wyrtis and Annalou arrived at the grave site, they suffered extreme emotional trauma when they discovered the grave had been desecrated. Barbara also suffered emotional distress when she was informed that the grave had been desecrated.

There is clear evidence that Lee Etta intentionally committed this extreme and outrageous conduct and that such conduct caused the Appellees severe emotional distress. *See Cullison,* 570 N.E.2d at 31. Accordingly, the record supports the trial court's finding that Lee Etta committed the tort of intentional infliction of emotional distress. *Reasor,* 635 N.E.2d at 158.

Lee Etta points to evidence which she contends proves that she did not intentionally cause any harm to the Appellees. Essentially, Lee Etta asks that we reweigh the evidence and conclude that the trial court's judgment was erroneous. We cannot do so. *See Banko,* 622 N.E.2d at 481. Instead, we may only consider the evidence that supports the trial court's judgment and the reasonable inferences drawn therefrom. *Id.* We find there is sufficient evidence to support the trial court's judgment that Lee Etta committed intentional infliction of emotional distress.

### C.

Lee Etta also argues that the trial court's award was "clearly excessive." Appellant's brief, p. 47. Specifically, Lee Etta contends that the trial court erred in assessing punitive damages.[6]

■■■ The primary consideration in punitive damage awards is the tortfeasor's conduct. *American Cyanamid Co. v. Stephen,* 623 N.E.2d 1065, 1074 (Ind.Ct.App.1993). Punitive damages may be awarded upon a showing of a "quasi-criminal" state of mind or willful and wanton misconduct which, un-

der existing conditions, the tortfeasor knows will probably result in injury. *Gray v. Westinghouse Elec. Corp.,* 624 N.E.2d 49, 54 (Ind. Ct.App.1993), *reh'g denied, trans. denied.* Conduct which is oppressive or amounts to gross negligence justifies punitive damages. *Id.* at 55.

■■■ When reviewing the sufficiency of the evidence for a punitive damage award, we apply the same level of scrutiny as any other sufficiency issue. *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 521 (Ind.1993). "We will affirm the judgment of punitive damages if, considering only the probative evidence and the reasonable inferences supporting it, without reweighing the evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence." *Id.*

■■■ As previously stated, Lee Etta's disinterment of the deceased's remains constituted outrageous and extreme conduct. The fact that she desecrated the grave prior to Memorial Day, the holiday on which the Appellees customarily decorated the grave, indicates willful and wanton conduct designed to cause emotional distress. *See Gray,* 624 N.E.2d at 54. Moreover, Lee Etta's admission that her motivation for disinterring the deceased was based on her prolonged litigation with Barbara also indicates that she had a "quasi-criminal" state of mind. *See id.* Accordingly, there was clear and convincing evidence supporting the trial court's award of punitive damages. *See Hickman,* 622 N.E.2d at 521. Therefore, we hold that the trial court properly awarded punitive damages.

### IV.

The final issue for our review is whether the trial court erred in reserving Barbara's original claims of fraud and breach of fiduciary duty. Lee Etta argues that because these claims were already settled in the agreed judgment order, Barbara was not entitled to "reopen this case." Appellant's brief, p. 42.

---

**6.** With respect to the trial court's tort judgment, Lee Etta appears to take exception to the court's award of compensatory damages and attorney's fees as well. However, she fails to develop any argument challenging these awards. *See* App.R. 8.3(A)(7). Accordingly, we will only address the issue of whether the trial court erred in granting punitive damages.

After entering an agreed judgment, the trial court has no authority to modify or change the judgment in any essential or material manner. *Hendrickson v. Hendrickson*, 531 N.E.2d 544, 546 (Ind.Ct.App.1988), *reh'g denied, trans. denied; see Scaros v. Chacker*, 115 Ind.App. 67, 68, 56 N.E.2d 505 (1944) (holding that after the agreed judgment has been approved, it "cannot subsequently be opened, changed, or set aside without the assent of the parties, in the absence of fraud, mutual mistake, or actual absence of consent, and then only by an appropriate legal proceeding"). Generally, once a party has accepted the benefits of a judgment, he cannot later have that judgment set aside. *See Terry v. Terry*, 158 Ind.App. 218, 221, 301 N.E.2d 853, 855 (Ind. Ct.App.1973).

The record reveals that on August 6, 1991, Barbara filed an action alleging that Lee Etta engaged in fraudulent conduct and abused her fiduciary duty as the deceased's attorney-in-fact. On October 18, 1993, the parties negotiated a settlement in which Lee Etta agreed to pay Barbara $60,-000. In exchange, Barbara agreed to "drop and forever waive her claims of fraud and breach of fiduciary duty which she alleges were committed by Defendant . . . ." Record, p. 18. The trial court later entered an agreed judgment order which memorialized this settlement.

When Lee Etta failed to make the required payments, Barbara petitioned the court to hold Lee Etta in contempt. On March 17, 1994, after a hearing, the trial court found that Lee Etta was in contempt for "making statements of fact to the Petitioner and under oath to this Court in that she knowingly misrepresented her then existing ability to make a cash settlement." Record, p. 22. The trial court then appointed two commissioners to secure sufficient funds from Lee Etta to satisfy the settlement payments. On April 25, 1994, Lee Etta made a $76,770.65 payment, satisfying her obligation under the agreed judgment order as well as the additional amounts imposed by the March 17, 1994 order.

Soon thereafter, Lee Etta disinterred the deceased's remains. As a result, Barbara filed a petition alleging that Lee Etta had failed to comply with prior court orders and committed the tort of intentional infliction of emotional distress. After a trial, the court found that Lee Etta was in contempt and that she committed intentional infliction of emotional distress. In addition, the court again addressed the agreed judgment order. In its tort judgment, the trial court stated:

> "The working of a species of actual fraud upon [Barbara] and this Court and the material breach and failure by [Lee Etta] to fulfill her obligations results in no duty on behalf of [Barbara] to "drop and forever waive her claims of fraud and breach of fiduciary duty which she alleges were committed by Defendant." The aforementioned claims of [Barbara] are hereby reserved without final determination in this decision.

Record, p. 336.

Here, the trial court's modification of the agreed judgment was material because it permitted Barbara to reopen her claims against Lee Etta. *See Hendrickson*, 531 N.E.2d at 546 (holding that a modification was material when a party was disallowed the judgment which it was given under the agreed judgment). Such a material modification was outside the court's authority once the agreed judgment was approved. *See id.* Moreover, Barbara was not entitled to reopen her claims against Lee Etta after she received the settlement payment. *See Terry*, 158 Ind.App. at 221, 301 N.E.2d at 855. Therefore, we find that the trial court erred in materially modifying the agreed judgment when Lee Etta had already satisfied her obligation under the judgment. Accordingly, this part of the trial court's tort judgment is reversed.[7]

---

7. The Appellees also request additional damages pursuant to App.R. 15(G). This rule provides, "[i]f the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases the discretion of the court; and the court shall remand such cause for execution." App.R. 15(G). Because we reverse in part, the Appellees' request is denied.

For the foregoing reasons, the trial court's judgment is affirmed in part and reversed in part.

AFFIRMED IN PART AND REVERSED IN PART.

FRIEDLANDER and DARDEN, JJ., concur.