## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 15 2020, 7:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Keating
Law Offices of Steven K. Deig, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the
Commitment of K.K.,

K.K.

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

January 15, 2020

Court of Appeals Case No.
19A-MH-953

Appeal from the Vanderburgh
Superior Court

The Honorable Mary Margaret
Lloyd, Judge

The Honorable Donald R. Vowels,
Magistrate

Trial Court Cause No.
82D05-1903-MH-1355

**Mathias, Judge.**

K.K. was involuntarily committed to the Evansville State Hospital on April 3, 2019, by an order of the Vanderburgh Superior Court. K.K. raises two issues for our review: (1) whether there is sufficient evidence to support his involuntary commitment; and (2) whether he received proper notice of the petition for involuntary commitment.

We reverse.

## Facts and Procedural History

K.K. was admitted to practice law in Indiana in 1988. He is a veteran of the Marines and served four tours in Iraq and one in Afghanistan. K.K. was also stationed for a time in Djibouti, in northern Africa, where he suffered a non-combat medical emergency. In the years before the events giving rise to this case, K.K. cared for an ailing parent, which caused him to incur significant financial losses that at one point jeopardized his home ownership.

In 2016, K.K. was charged with two counts of Class A misdemeanor resisting law enforcement and one count of Class A misdemeanor criminal trespass. In 2017, K.K. was charged with one count of Class A misdemeanor intimidation. The filing of these charges, all in Marion County, led to a disciplinary action against K.K. before the Indiana Supreme Court Disciplinary Commission. His law license was subject to an "emergency interim suspension" during the pendency of the disciplinary action. Meanwhile, the Marion Superior Court presiding over the misdemeanor charges ordered that K.K. undergo a

competency evaluation; K.K.'s court-appointed counsel stipulated to K.K.'s incompetence and agreed to waive a competency hearing over K.K.'s objection.

[5] On May 15, 2018, the trial court entered an order committing K.K. to the care and custody of the Indiana Family and Social Services Administration, Division of Mental Health and Addiction ("DMHA"). The trial court concluded that K.K. "has insufficient comprehension to understand the nature of the criminal action against him and to assist in preparing a defense," which is also referred to as insufficient comprehension to stand trial ("ICST"). Ex. Vol., p. 90. The order directed that:

> [I]f [K.K.] is unable to understand the proceedings and assist in the preparation of his defense within six (6) months after the date of his admission to a psychiatric institution, the [DMHA] shall institute regular commitment proceedings under [Ind. Code] 16-14-9.1.[1]

Ex. Vol., p. 91.

[6] Evansville State Hospital ("the hospital") in Vanderburgh County was designated as the appropriate institution for K.K.'s confinement, evaluation, and treatment; K.K. was admitted to the hospital in August 2018.

[7] Approximately six months later, on March 13, 2019, the hospital filed a petition for K.K.'s involuntary commitment, which was supported by a physician's

---

[1] Effective July 1, 2018, the relevant Title 16 provisions were replaced by new sections under Title 12; *see* I.C. § 12-26-7-5.

emergency statement authored by psychiatrist Dr. David Gray. The trial court held a hearing on the petition on April 3, 2019, at which time Dr. Gray and the hospital's associate director of nursing testified for the State; K.K. and his cousin Diane Gordon ("Gordon") testified for K.K.

[8] Dr. Gray had treated K.K. since his August 2018 admission to the hospital and had diagnosed K.K. with delusional disorder, persecutory type. K.K. initially refused medication at the hospital but did comply with taking the prescribed medication after the hospital received an order to treat in November 2018. Dr. Gray testified that K.K.'s behavior at the hospital had been both cooperative and uncooperative: K.K. was willing to participate in normal activities in his unit and in group treatments but was less willing or refused to undergo individual testing and treatment. Dr. Gray explained that he did not find K.K. to pose a danger to himself or others. Dr. Gray did believe K.K. was gravely disabled as a result of his mental illness. K.K.'s delusions were often related to courts and local events and included legal conspiracies. He exhibited distrust with the staff and processes of the hospital, including doubt about Dr. Gray's own qualifications as a psychiatrist. Dr. Gray thought K.K.'s reluctance to address the pending misdemeanor criminal charges against him—and the events giving rise to the charges themselves—indicated severe impairment of K.K.'s judgment and processing. The hospital's associate director of nursing, who regularly interacted with K.K., also testified and explained that K.K.'s therapeutic relationships were strained by his distrust and his threats of legal action.

Dr. Gray testified that K.K. had not been restored to competency in the time he had been treated at the hospital, but that if K.K. cooperated with treatment, Dr. Gray believed his competency could be restored. Accordingly, Dr. Gray recommended that K.K. be involuntarily committed, continue taking medication as prescribed, and reassess his willingness to engage in therapy and testing. The trial court entered an order of involuntary regular commitment the same day as the hearing on the State's petition. Its order read, in relevant part:

> 1. Respondent is suffering from Delusional, Persecutory Type, which is a mental illness as defined in Ind. Code § 12-7-2-130.
>
> 2. . . . Respondent is gravely disabled as defined in Ind. Code § 12-7-2-96.
>
> 3. Respondent is in need of custody, care and treatment [in] Evansville State Hospital or an appropriate facility for a period expected to exceed ninety (90) days.
>
> * * *
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Respondent is accordingly committed to the designated facility until discharged or until the Court terminates the commitment.

Appellant's App. pp. 6–7.

The court also ordered for a periodic report to be submitted by September 30, 2019. K.K. now appeals the order of involuntary commitment. Additional facts will be provided where appropriate.

# Standard of Review

[11] Our supreme court has explained involuntary commitment proceedings as follows:

> The purpose of civil commitment proceedings is dual: to protect the public and to ensure the rights of the person whose liberty is at stake. The liberty interest at stake . . . goes beyond a loss of one's physical freedom, and given the serious stigma and adverse social consequences that accompany such physical confinement, a proceeding for an involuntary civil commitment is subject to due process requirements. To satisfy the requirements of due process, the facts justifying an involuntary commitment must be shown "by clear and convincing evidence . . . [which] not only communicates the relative importance our legal system attaches to a decision ordering an involuntary commitment, but . . . also has the function of reducing the chance of inappropriate commitments."

*Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271, 273 (Ind. 2015) (quoting *Commitment of J.B. v. Midtown Mental Health Ctr.*, 581 N.E.2d 448, 450 (Ind. Ct. App. 1991), *trans. denied)* (additional quotes and citations omitted).

[12] Thus, an order of involuntary commitment is warranted only if clear and convincing evidence establishes that (1) the individual is mentally ill and either dangerous or gravely disabled, and (2) the commitment of that individual is appropriate. I.C. § 12-26-2-5. Clear and convincing evidence requires proof that the existence of a fact is "highly probable." *Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513, 527 (Ind. Ct. App. 1989), *trans. denied*. For purposes of involuntary

commitment, mental illness is defined by law as a psychiatric disorder that (A) substantially disturbs an individual's thinking, feeling, or behavior; and (B) impairs the individual's ability to function. I.C. § 12-7-2-130.

[13] When we review the sufficiency of the evidence with respect to involuntary commitment proceedings, we look only to the evidence most favorable to the trial court's decision and all reasonable inferences to be drawn therefrom. *Golub v. Giles*, 814 N.E.2d 1034, 1038 (Ind. Ct. App. 2004), *trans. denied*. We will not reweigh the evidence or judge witness credibility. *Id.* The judgment of the lower court will be affirmed if, after considering the probative evidence and reasonable inferences therefrom, a reasonable trier of fact could have found the necessary elements proven by clear and convincing evidence. *Civil Commitment of T.K.*, 27 N.E.3d at 273–74. "There is no constitutional basis for confining a mentally ill person who is not dangerous and can live safely in freedom." *Commitment of J.B.*, 581 N.E.2d at 451.

[14] The issues presented in this case are whether, considering the probative evidence and reasonable inferences favorable to judgment, the trial court could have found by clear and convincing evidence that (1) K.K. meets the statutory definition of mental illness; (2) as a result of that mental illness, K.K. is gravely disabled such that involuntary commitment is warranted; and (3) whether untimely notice of the hearing on the State's petition denied K.K. due process.

### I. Mental Illness

[15] Dr. Gray testified that K.K. suffers from delusional disorder, persecutory type, and that two other forensic assessors at the hospital had also reached the same diagnosis. K.K. does not challenge this diagnosis on appeal, but he does challenge whether it meets the statutory definition of mental illness which requires, among other thing, that the disorder impairs K.K.'s ability to function. *See* I.C. § 12-7-2-130. Dr. Gray's testimony regarding K.K.'s mental illness was based on his knowledge that K.K. was admitted "as an ICST" and on the observations he made during the six months of K.K.'s emergency commitment. Tr. p. 11. For the first three months of his commitment, K.K. refused to take medication or otherwise engage in treatment. K.K. had delusional thought processes about his own role in "uncovering corruption in Marion County" and about judges lacking legal authority to hear cases in the county. Tr. p. 13. During K.K.'s testimony, he noted that his law license was under an interim suspension because of a pending disciplinary action, due to four misdemeanor charges brought against K.K. in relation to which he spent time in Marion County Jail.

[16] Evaluating this evidence and the inferences that can reasonably be drawn therefrom in the light most favorable to the trial court's judgment, we disagree with K.K. that his disorder does not impair his ability to function. That K.K., an attorney, was charged with several misdemeanor offenses, declared ICST and admitted to the hospital impaired his ability to function professionally, at the least. *See In re D.W.H.*, 411 N.E.2d 721 (Ind. Ct. App. 1980) (reversing

finding of mental illness where appellant maintained regular work schedule despite diagnosed disorder and no other evidence indicated impairment of his ability to function). While hospitalized, K.K. was diagnosed with a psychiatric disorder by a trained psychiatrist yet refused treatment for that disorder until the hospital sought and received an Order to Treat. A reasonable person could conclude from this evidence that K.K.'s ability to function was impaired as a result of his diagnosed psychiatric disorder, and thus the State established by clear and convincing evidence that K.K. was mentally ill under Indiana Code section 12-7-2-130.

## II. Gravely Disabled

[17]     K.K. challenges the trial court's order of involuntary commitment, arguing that neither prong of the applicable standard for proving grave disability was established by clear and convincing evidence, as is required before an individual may be involuntarily committed. Specifically, K.K. contends that the trial court erred in finding him gravely disabled because he was functioning independently and was not at risk of coming to harm because of any impairment in his judgment, reasoning, or behavior. Grave disability is defined as:

> [A] condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> > (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
> >
> > (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior **that**

> **results in the individual's inability to function independently**.

I.C. § 12-7-2-96 (emphasis added).

[18] Dr. Gray testified that K.K.'s ability to provide for his food, clothing, shelter, and other essential needs was "marginal" based on K.K.'s home having been in foreclosure and the suspension of his law license. Tr. pp. 15–16. K.K. testified that prior to his incarceration and hospitalization, he was living independently and meeting his essential needs. K.K. also explained the reasons for his mortgage payment delinquency and how he ultimately avoided foreclosure with a loan from his cousin, Diane Gordon, and with assistance from a Wounded Warriors group. Gordon testified that she was maintaining K.K.'s home while he was hospitalized, and that the home was available for him to live in upon his release. No evidence was presented to dispute K.K.'s ability to provide food or clothing for himself. Because the State did not demonstrate with this testimony that K.K. was in danger of coming to any harm based on an inability to shelter himself, the majority of the parties' testimony focused on evidence of the second prong, to which we now turn.

[19] Dr. Gray's testimony included several reasons why he believed that K.K.'s judgment and processing were severely impaired. K.K. believes there is corruption in Marion County and that the specific judge presiding over his charges lacks authority to do so, beliefs that he promoted at one point on his own website. Dr. Gray, however, was most concerned with K.K.'s unwillingness to engage in treatment to restore his competency and address his

status as ICST. In Dr. Gray's experience, professional individuals facing similar circumstances to K.K.'s "want to get those [charges] resolved and to move on in their professional career." Tr. p. 50. That K.K. was not highly motivated to address the pending misdemeanor charges against him and had retained and rejected the services of several attorneys was cited as evidence of substantial impairment of K.K.'s reasoning. Furthermore, Dr. Gray's review of the records of K.K.'s misdemeanor charges and the ICST finding led him to report that they contained further evidence of poor judgment in processing.

[20] On cross examination, Dr. Gray expanded on his concerns about K.K.'s judgment in the context of K.K.'s participation in his legal strategy and the restoration of K.K.'s competency:

> A: I think [K.K.'s] greatest challenge is to have a continuing relationship [with an attorney]. Because he presents well initially, but then after a couple of visits things don't go so well.
>
> Q: On what do you base that statement? What facts do you base that statement on?
>
> A: Part of it is my interactions with [K.K.]. And part of it—and I've tried to review this with [K.K.]—he's got misdemeanor charges that have not been taken care of for about two years. And that's what I had trouble understanding, why have they not been addressed or dismissed, and why are we meeting here today for something that happened two and three years ago.
>
> Q: Well we're here today because you filed a petition asking that [K.K.] be involuntarily committed, which you're required to do

by statute since he did not regain competence within six months. That's why we're here, right? . . .

A: Yes.

Q: And you're not a lawyer.

A: No.

Q: So [you're] extrapolating from your experience with how he has interacted with you to how he might interact with lawyers.

A: Yes.

Tr. pp. 41–42.

[21] Also demonstrating impaired judgment, reasoning, or behavior was K.K.'s skepticism of Dr. Gray and the rest of the treatment team. Dr. Gray explained that K.K. did not believe he was board certified or licensed and that he was himself delusional. K.K. also declined to sign release forms that required his signature and believed his mail that passed through the hospital's system had been tampered with. Nurse McCall testified that K.K. was "adamantly opposed" to medication, to his diagnosis, and to testing. Tr. p. 54. She said that K.K. often threatened to sue the staff such that Nurse McCall "put an intervention in his treatment plan that we would cease conversation with him when he threatened [] litigation." Tr. p. 54. K.K.'s level of distrust of the staff interfered with the therapeutic relationship and treatment.

[22] Dr. Gray also cited "unusual circumstances" as evidence of K.K.'s impaired judgment, reasoning, or behavior. Tr. pp. 16–17. On one occasion, K.K., a vegetarian, suspected the hospital cafeteria served him sheep testicles. K.K. once mentioned the cloning of patients at the hospital. Hospital staff also observed K.K. saving condiment packets but refusing to explain why.

[23] Thus, Dr. Gray's conclusion that K.K. was gravely disabled was based on K.K.'s distrust of his treatment at the hospital, which for a time included refusing medication, and isolated instances of bizarre behavior. However, paranoia, alone, does not establish an inability to function independently. *Commitment of M.E. v. Dep't of Veterans Affairs*, 64 N.E.3d 855 (Ind. Ct. App. 2016), *disapproved of on other grounds.* Our supreme court has clarified that refusal to accept medication, standing alone, is insufficient to establish grave disability because it does not establish, by clear and convincing evidence, that such behavior inhibits the individual from functioning independently. *See* I.C. § 12-7-2-96(2); *see, e.g., J.S. v. Ctr. For Behavioral Health*, 846 N.E.2d 1106, 1112–13 (Ind. Ct. App. 2006) (where commitment because of grave disability was affirmed on appeal because committed person refused medication and had lost a lot of weight because she refused to eat for fear of being poisoned), *disapproved of on other grounds, trans. denied*; *Golub*, 814 N.E.2d at 1037–39 (where commitment because of grave disability was affirmed on appeal because committed person refused to take medication and destroyed property, made threats, and lunged at another person).

[24]     K.K. declined individual therapy and treatment but participated in group activities and therapies and was not otherwise disruptive during his emergency commitment at the hospital. We note, too, that although K.K. refused medication for half of the time of his commitment, he complied when the hospital received an Order to Treat. In addition, Dr. Gray pointed to several examples of K.K.'s unusual behavior at the hospital. However, we have previously cautioned against orders of involuntary commitment being based on "a few isolated instances of unusual conduct which occurred within a range of conduct which is generally acceptable." *Commitment of J.P. v. Midtown Mental Health Center*, 581 N.E.2d 448, 450 (Ind. Ct. App. 1991), *trans. denied*. On this point, the United States Supreme Court has explained, and we have cited approvingly, that "[l]oss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *Addington v. Texas*, 441 U.S. 418, 427 (1979). The evidence in this case has not clearly and convincingly shown that K.K.'s refusal to take medication and participate in all aspects of his psychiatric treatment, plus isolated instances of behavior based on delusional beliefs, constitute grave disability by resulting in substantial impairment such that K.K. is unable to function independently.

[25]     Dr. Gray's conclusion that K.K. was gravely disabled was also based on evidence of K.K.'s deluded beliefs about Marion County courts and the perceived tardiness with which K.K. was addressing his pending criminal charges. At best, the evidence suggests that K.K.'s beliefs about the legal professionals around him complicates his own legal situation, slows the

resolution of his pending criminal charges, and slows the restoration of his competency and thus also his status as ICST. The evidence of K.K.'s impaired judgment or behavior based on paranoia does not indicate that K.K. is unable to function independently under the law. Accordingly, the evidence is not sufficient to support his involuntary commitment on the grounds of grave disability.

[26] Importantly, even if we agree that the State proved K.K.'s judgment, reasoning, and behavior was substantially impaired to the extent that he was unable to function independently, which we do not, the State failed to present evidence identifying how that impairment made K.K. in danger of coming to harm. I.C. § 12-7-2-96. That the individual alleged to be gravely disabled be in danger of coming to harm as a result of his inability to function independently is what the statute requires. Having failed to present evidence thereof, the trial court's judgment that K.K. was gravely disabled as a result of mental illness cannot be supported. Thus, in light of the statutory prerequisite that the necessary elements for an involuntary commitment be established by clear and convincing evidence, we hold that the evidence presented was insufficient to establish that K.K. was gravely disabled. I.C. § 12-26-2-5(e)(1).

### III. Waiver

[27] Finally, K.K. argues for the first time on appeal that his due process rights were violated because he did not receive timely notice of the hearing on the petition for his involuntary commitment. Appellant's Br. at 18; *see* I.C. § 12-26-7-4(b). An issue—particularly with a trial court's procedure—that is raised for the first

time on appeal is waived. *Mitchell v. Stevenson*, 677 N.E.2d 551, 558 (Ind. Ct. App. 1997), *trans. denied*. K.K.'s counsel did not object to the alleged untimeliness of the notice of hearing on the petition, and thus the argument is waived.

[28] Notwithstanding waiver, to prevail on his claim that his due process rights were violated, K.K. would have had to demonstrate that the lack of timely notice caused him prejudice, which K.K. has not done. At the hearing on the State's petition for involuntary commitment, K.K. was ably represented by counsel. Counsel succeeded in excluding from evidence documents pertaining to the disciplinary complaint and to the criminal charges against K.K. Tr. pp. 89, 93. Thus, to the extent K.K. argues he was prejudiced by the untimeliness of the notice provided, the argument is belied by the record of the proceedings.

## Conclusion

[29] Clear and convincing evidence was not presented at K.K.'s involuntary commitment hearing to establish that he was gravely disabled as a result of mental illness, and we thus hold that K.K.'s involuntary commitment was improper and the judgment of the trial court is reversed.

[30] Reversed.

Robb, J., and Pyle, J., concur.