**Ivan R. JACKSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 19A01–9406–CR–195.

Court of Appeals of Indiana,
Third District.

Dec. 20, 1994.

Transfer Denied Feb. 28, 1995.

John Pinnow, Sp. Asst. to the State Public Defender, Greenwood, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Ivan R. Jackson ("Jackson") appeals from the trial court's order finding him in indirect contempt of the Dubois Circuit Court. In his appeal, Jackson presents one restated issue for our review: whether the trial court's order compelling him to testify under a grant of immunity violated his constitutional privilege against self-incrimination.

We affirm.

Jackson pleaded guilty to robbery, a class B felony [1], and criminal confinement [2], a class D felony. A condition of the plea agreement required Jackson to cooperate fully with the State of Indiana in the prosecution of the other co-defendants involved in the crime and give a complete and detailed statement regarding the crimes. Jackson subsequently refused to testify during a deposition conducted by one of the co-defendants.

The State filed a request with the trial court to grant Jackson use and derivative use immunity which was granted by the trial court. Jackson again refused to testify in a deposition and asserted that he would not testify during the co-defendant's trial as well. After a hearing, the trial court found Jackson in indirect contempt of court and added six more months of incarceration to his current sentence.

Jackson contends that the trial court's order compelling him to testify under a grant of immunity was invalid because it violated his constitutional privilege against self-incrimination.

The determination of whether a party is in contempt of court is a matter within the discretion of the trial court. We will review the trial court's decision for an abuse of discretion and will reverse only if it is against the logic and effect of the facts and circumstances before the court. *Head v. Commiss'r, Indiana Dept. of Envtl. Mgt.* (1993), Ind.App., 626 N.E.2d 518, 526, *reh. denied.*

If the court determines that a witness may refuse to answer a question based upon his privilege against self-incrimination, I.C. 35–37–3–2 allows a prosecuting attorney to make a written request that the court grant use immunity to that witness.

I.C. 35–37–3–3 states in pertinent part:

> Upon a request of the prosecuting attorney, the court shall grant use immunity to a witness. The court shall instruct the witness, by written order or in open court, that any evidence the witness gives, or evidence derived from the evidence, may not be used in a criminal proceeding against that witness.

> (c) If a witness refuses to give the evidence after he has been granted use immunity, the court may find him in contempt.[3]

The United States Supreme Court has determined that statutes which compel an unwilling witness who invokes the privilege against self-incrimination to testify by invoking immunity are constitutional. *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. An immunity statute will be upheld where the immunity granted is coextensive with the scope of the privilege. *Id.* at 459, 92 S.Ct. at 1664.

Our supreme court, following *Kastigar*, noted that the balance between the imperatives of the privilege and the government's interest is achieved by granting witness immunity to those who are forced to testify against themselves. *In re Caito* (1984), Ind., 459 N.E.2d 1179, 1182, *cert. denied*, 469 U.S. 805, 105 S.Ct. 62, 83 L.Ed.2d 13.

Jackson states that because he filed a petition for postconviction relief his immunized testimony could be used against him in any later prosecution. Jackson argues that his privilege against self-incrimination will be violated because "[t]he danger exists that the State's witnesses against [him] could be exposed to his immunized testimony and the

---

1. Ind.Code 35–42–5–1 (1993).

2. I.C. 35–42–3–3(1).

3. Contempt can be either direct or indirect. Direct contempt usually refers to conduct directly interfering with court proceedings while court is in session. Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender has notice. *Andrews v. State* (1987), Ind.App., 505 N.E.2d 815, 830.

State could obtain other witnesses against him if he named who else was present at the crimes." Appellant's Br. at 14.

The *Kastigar* court recognized such potential dangers and misuse of the grant of use and derivative use immunity by the prosecution and noted that the prosecution in a subsequent proceeding would have an affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. *Kastigar, supra,* 406 U.S. at 460, 92 S.Ct. at 1664–65 (citing *Murphy v. Waterfront Commission* (1964), 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678).[4]

In *Caito, supra,* the defendant was found in direct contempt for refusing to testify as a grand jury witness under a grant of immunity. Our supreme court, following *Kastigar,* upheld the contempt charge and concluded:

> Notwithstanding the fact that appellant might have fared better had he testified under the immunity granted, and thus placed this heavy duty of proof upon the State at any later prosecution to show that the evidence presented against him had an independent source, we find the appellant chose the more certain route to penalty of contempt.

*Caito, supra,* at 1184.

Jackson relies upon *United States v. Poindexter* (D.C.Cir.1991), 951 F.2d 369, *cert. denied,* (1992), —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 583 and *United States v. North* (D.C.Cir.1990), 910 F.2d 843, *modified on reh'g,* (D.C.Cir.1990), 920 F.2d 940, *cert. denied,* (1991), 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477, to support his claim.

In *Poindexter* and *North,* both defendants were granted use and derivative use immunity in order to testify in the Iran–Contra affair. Both were subsequently charged and convicted with various crimes. The Court of Appeals reversed and remanded several of their convictions on the grounds that the independent counsel prosecuting the cases

did not prove that the evidence presented against them was wholly independent of their immunized congressional testimony. *Poindexter, supra,* at 375 and 377; *North, supra,* at 872–873.

Citing *Poindexter* and *North,* Jackson urges us to reverse his contempt charge based upon the possibility that his immunized testimony could be used to his detriment during a new trial pending the grant of his petition for post-conviction relief. However, *Poindexter* and *North* do not support the proposition that such a claim can be determined prior to the alleged detrimental use of the immunized testimony. We therefore conclude that Jackson's contention is speculative and without merit.

■ Accordingly, based upon *Caito, supra,* and *Kastigar, supra,* we conclude that the trial court did not err when it found Jackson to be in indirect contempt of court pursuant to I.C. 35–37–3–3.

Affirmed.

SHARPNACK, C.J., and
FRIEDLANDER, J., concur.

---

**4.** The Court further opined that one asserting such a claim need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all the evidence it proposes to use was derived from legitimate independent sources. *Id.* 406 U.S. at 461–462, 92 S.Ct. at 1665. The Court maintained that this puts the defendant against whom incriminating statements have been obtained in a stronger position at trial than a defendant who invokes his privilege against self-incrimination. *Id.* at 461, 92 S.Ct. at 1665.