Debra PACKER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0112–PC–458.

Court of Appeals of Indiana.

Oct. 2, 2002.

Jon Aarstad, Vanderburgh County Public Defender, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Debra Packer appeals the trial court's determination of contempt and subsequent revocation of her probation. Packer raises two issues, which we restate as:

I. Whether the trial court abused its discretion when it found Packer in contempt; and

II. Whether sufficient evidence exists to support the trial court's revocation of Packer's probation.

In addition, we sua sponte address our concerns regarding the representation provided by the public defender who represents Packer in this appeal. We affirm.

The facts most favorable to the judgments follow. On April 6, 2001, a jury found Packer guilty of battery as a class D felony.[1] On April 20, 2001, the trial court sentenced Packer to eighteen months in the Department of Correction, with six of those months to be executed and twelve of the months suspended. The trial court did not require Packer to report to the Probation Department during her suspended sentence; however, the trial court did place two conditions on Packer. First, Packer was required to cooperate with the Office of Family and Children. Second, Packer was not allowed to have contact with her children except as approved by the Office of Family and Children.

On August 23, 2001, Packer pleaded guilty to invasion of privacy as a class A misdemeanor.[2] On October 9, 2001, the State filed a petition to revoke Packer's probation in which the State alleged that Packer had committed invasion of privacy.

On October 18, 2001, the trial court held a probation revocation hearing. At that hearing, Packer asserted her Fifth Amendment privilege not to incriminate herself and refused to answer any questions. The trial court indicated that Packer would be required to answer identification questions, such as her name and address. Despite being directly told by the trial court that she was to be placed under oath and ordered to answer such questions, Packer refused to cooperate. Consequently, the trial court found Packer to be in contempt of court and ordered her to spend ninety days in jail.

On November 15, 2001, at a second probation revocation hearing, the State presented a certified docket sheet indicating that Parker had pleaded guilty to invasion of privacy. On November 20, 2001, the trial court found that Packer violated her probation and imposed the suspended portion of her sentence.

## I.

Prior to addressing the appeal, we note our concern regarding the representation

---

1. Ind.Code § 35–42–2–1(a)(2)(B).

2. Ind.Code § 35–46–1–15.1(a)(1).

provided by Packer's appellate counsel, a public defender. As the Issues Statement, Packer's brief contains the following two statements:

A. Ms. Packer's appellate counsel is unable to construct a non-frivolous argument that the Honorable Scott R. Bowers erred in finding the [sic] her to be in direct criminal contempt of court on October 18, 2001 and sentencing her to ninety days' imprisonment.

B. Ms. Packer's appellate counsel is unable to construct a non-frivolous argument that the Honorable Robert J. Pigman erred in revoking the Appellant's probation or suspended sentence on November 15, 200[1].

Appellant's Brief at 2. Then, after Summary of the Argument and Argument sections that essentially demonstrate that the trial court did not commit any error on the two issues raised, counsel included the following Conclusion in Packer's brief:

Because Packer filed a Notice of Appeal and Appellant's Case Summary, it seemed appropriate to file an Appellant's Brief of some kind, but Packer's appellate counsel, having reviewed the record and conducted appropriate research, is unable to construct non-frivolous arguments to support the most important of the contentions sought to be addressed on Packer's behalf, so a prayer for relief seems out of place.

Appellant's Brief at 11. There is nothing to indicate that counsel at anytime consulted with Packer or advised her of the positions that would be taken in the brief.

■ Although matters of attorney discipline do not fall within our jurisdiction, pursuant to Ind. Appellate Rule 4(B)(1)(b), we feel that it is incumbent upon us to explain why counsel's decision to submit such a brief concerns us and to suggest an

alternative approach that counsel should take in the future in such a situation.

First, Indiana's Rules of Professional Conduct for Lawyers require a lawyer to provide competent representation to his clients. Ind. Prof. Conduct Rule 1.1. The Comment to that rule explains: "A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person." Our supreme court has previously explained that an "appellate attorney has an obligation, both to his client and this court to see that the issues raised are suitably argued." *Dortch v. Lugar,* 255 Ind. 545, 588, 266 N.E.2d 25, 50 (1971), *abrogated on other grounds by Collins v. Day,* 644 N.E.2d 72 (Ind.1994). In Packer's brief, counsel raised two issues and then explained that the trial court did not err on either one. Such explanations are not suitable arguments *for* a client.

■ Second, the Comment to another of the Ind. Professional Conduct Rules requires a lawyer to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Comment to Ind. Prof. Conduct Rule 1.3. If an attorney cannot protect the interests of his client to the best of his ability, he should "withdraw from the case." *Sims v. State,* 246 Ind. 660, 667, 208 N.E.2d 469, 472 (1965), *cert. denied,* 384 U.S. 922, 86 S.Ct. 1374, 16 L.Ed.2d 442 (1966); *see also State ex rel. White v. Hilgemann,* 218 Ind. 572, 579, 34 N.E.2d 129, 131 (1941) (holding that indigent defendant had right to appointed appellate counsel and, in the process, stating that "if competent counsel finds no substantial error to assign upon appeal, and so advises the defendant and the trial court, the constitutional requirement is satisfied and the defendant may not demand that the trial

court find and appoint other counsel who will advise an appeal"). By filing a brief that includes the language cited above, counsel has neither acted with dedication to the interests of Packer nor advocated with zeal on Packer's behalf.

We recognize that, by stating that he could make no nonfrivolous argument, counsel displayed "Candor Toward the Tribunal" as required by Ind. Professional Conduct Rule 3.3. In addition, we recognize the difficult ethical challenge that may face public defenders in some situations, when they must balance the requirement of advocating with zeal on behalf of their clients with the requirements of candor and bringing meritorious claims. However, the balance struck by counsel appears to us to have been inappropriate, as counsel avoided a frivolous appeal by failing to advocate for his client while continuing to represent her.

A better balance for counsel to strike would be to follow the dictates of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), *reh'g denied*, and *Penson v. Ohio*, 488 U.S. 75, 82, 109 S.Ct. 346, 351, 102 L.Ed.2d 300 (1988). As set forth in *Anders*:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae ... Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders v. California*, 386 U.S. at 744, 87 S.Ct. at 1400 (footnote omitted).

While *Anders* and *Penson* discuss an appellant's right to appellate counsel under the federal constitution, we uncovered no caselaw suggesting that appellant's counsel filing an *Anders* brief would be inappropriate under the Indiana Constitution.[3] *See,*

---

**3.** We have in the matter of post-conviction relief a process by which counsel for the petitioner may withdraw:

(c) Counsel shall confer with petitioner and ascertain all grounds for relief under this rule, amending the petition if necessary to include any grounds not included by petitioner in the original petition. In the event that counsel determines the proceeding is not meritorious or in the interests of justice, before or after an evidentiary hearing is held, counsel shall file with the court counsel's withdrawal of appearance, accompanied by counsel's certification that 1) the petitioner has been consulted regarding grounds for relief in his pro se petition and any other possible grounds and 2) appropriate investigation, including but not limited to review of the guilty plea or trial and sentencing records, has been conducted. Petitioner shall be provided personally with an explanation of the reasons for withdraw-

*e.g., Petition of Stillabower*, 246 Ind. 695, 696–697, 210 N.E.2d 665, 665–666 (1965) (holding that the public defender was not required to represent the petitioner in post-conviction proceedings when there were no meritorious grounds for relief); *In re Harvey*, 247 Ind. 23, 210 N.E.2d 859 (1965) (holding that public defender did not have to represent petitioner in post-conviction proceedings when there were no meritorious issues to present); *Hilgemann*, 218 Ind. at 579, 34 N.E.2d at 131 (noting that indigent defendant has no right to appellate counsel if there are no meritorious issues to advance on appeal). Consequently, if defense counsel are faced with a similar situation in the future, we suggest that they try an alternative approach to avoid violating their professional responsibilities to both this court and their clients.

## II.

▮ The first issue addressed by the parties is whether the trial court abused its discretion when it found Packer in contempt. A trial court has discretion to determine whether a party is in contempt of court. *Jackson v. State*, 644 N.E.2d 607, 607 (Ind.Ct.App.1994), *trans. denied.* We will reverse the trial court's finding only if the trial court abused its discretion. *Williams v. State ex rel. Harris*, 690 N.E.2d 315, 316 (Ind.Ct.App.1997). An abuse of discretion has occurred if the trial court's decision is "against the logic and effect of the facts and circumstances before the court or is contrary to law." *Id.*

▮ Contempt of court involves disobedience of a court that undermines the court's justice, authority, and dignity. *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind.1994), *cert. denied*, 513 U.S. 1017, 115

S.Ct. 578, 130 L.Ed.2d 493 (1994). Contempt can either be direct or indirect. *Williams*, 690 N.E.2d at 317. Indirect contempt is "the willful disobedience of any lawfully entered court order of which the offender has notice." *Jackson*, 644 N.E.2d at 608 n. 3. Direct contempt, which "usually refers to conduct directly interfering with court proceedings while court is in session," *id.*, does not necessarily have to occur inside the courtroom or during a judicial proceeding. *Williams*, 690 N.E.2d at 317. However, direct contempt must be an act within the judge's personal knowledge. *Id.* Examples of direct contempt include "creation of noise or confusions, disrespectful conduct and refusing to take the witness stand in a trial." *Id.* (quoting *Curtis v. State*, 625 N.E.2d 496, 497 (Ind.Ct.App.1993)).

▮ Packer refused to answer questions based upon her Fifth Amendment right against self-incrimination. The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. This privilege applies not only in criminal trials but also "to parties in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate them in future criminal proceedings." *Pitman v. State*, 749 N.E.2d 557, 561 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* While a probationer does not have all of the rights afforded to a defendant prior to trial, the Fifth Amendment does protect a probationer from answering questions that may incriminate her in a subsequent criminal prosecution. *Id.* However, a probationer may not invoke the Fifth Amendment to

---

al. Petitioner retains the right to proceed pro se, in forma pauperis if indigent, after counsel withdraws.

Ind. Post–Conviction Rule 1(9)(c).

avoid answering questions regarding "basic identifying information and any disclosures which are necessary to effectively monitor her probation." *Id.*

 Here, Packer asserted her Fifth Amendment right to not testify. The State insisted that Packer could not assert her Fifth Amendment privilege in a probationary proceeding. After a five-minute recess, the following discussion occurred:

Court: Okay, during the recess I did a little research and there is a case called *Pittman* [*Pitman*] *v. State*, ah, issued May 3, 2001, by the Court of Appeals, I don't have a northeastern cite on it, in that case the State was permitted to question as to basic identifying information including the defendant's name, address, date of birth, social security number, conviction in the pending probationary matter and pending charges in another Court. I will permit the defendant to be called, I will permit her to be questioned as to those matters. Is there other record by either the State or the defense at this time?

State: No.

Defense: Your Honor the defendant continues to assert her Fifth Amendment privileges.

Court: Ma'am, I'm going to put you under oath and then I'm going to order you to answer the questions that are asked.

Packer: Well, I still won't.

Court: Are you saying you will defy direct Court order to that effect?

Packer: Right, I don't even know what this is all about and I still won't.

Court: All you are going to be asked is your identity and whether you …

Packer: Well, I still won't because I can plead my Fifth Amendment.

Court: You are in direct criminal contempt of Court, you are sentenced to ninety days in Vanderburgh County Jail.

October 18 Transcript at 5–6. Packer refused to answer questions after the trial court had informed her that her Fifth Amendment privilege did not apply to the questions that he would allow. A defendant's refusal to answer proper questions constitutes direct contempt. *Jacobsen v. State,* 179 Ind.App. 37, 41, 384 N.E.2d 1041, 1043–1044 (1979) (holding trial court did not err when it found appellant in contempt for refusing to answer a proper question). Therefore, the trial court did not abuse its discretion when it found Packer in contempt for refusing to answer proper questions. *See id.*

### III.

The second issue addressed by the parties is whether sufficient evidence exists to support the trial court's revocation of Packer's probation. Before addressing the sufficiency issue, we must address a preliminary matter regarding whether Packer was in fact on probation. Packer alleges that the trial court "suspended" her sentence rather than placing her on probation, and Packer appears to argue that this distinction would make some difference in the outcome of her appeal under *Davis v. State,* 256 Ind. 58, 267 N.E.2d 63 (1971).

Contrary to Packer's allegation, the trial court placed her on probation. At the sentencing, the trial court stated:

We'll show that the Court has reviewed the Pre Sentence Investigation Report, after hearing arguments of counsel and from the Defendant, finds that there exists no aggravating factors and there exists no mitigating factors, and sentences you, Ms. Packer, to a Class D felony and to the Indiana Department of Corrections for a period of

18 months. Alright. The first six months is going to be executed and the balance is suspended to non-reporting probation. Condition of your ... probation is two-fold. Number one, that you continue with the Office of Family & Children. And two, that you have no contact with your children, except as approved by the Office of Family & Children. Alright? Now, I recall the testimony, the testimony was, from the Office of Family & Children that you did make most of your appointments to see your kids. So apparently you want to see your kids, but you weren't cooperating with them on many of the other things that they were asking of you. So, as a condition of your probation, the Court's ordering that you cooperate with the Office of Family & Children. If you fail to do so, you subject yourself, Ms. Packer to a petition to revoke and you could go back to jail. Alright. You have enough credit time that you're not gonna go to jail, unless you violate your probation.

Direct Appeal Transcript at 206–207. Then, after defense counsel mentioned to the court that the probation department appeared to have problems with the term "non-reporting probation," the trial court stated, "I don't need for Ms. Packer to have contact or even go to the Probation Department ... so we'll show it 'suspended'." Direct Appeal Transcript at 207–208. Despite the fact that the trial court changed its terminology to eliminate any confusion about whether Packer was required to report to the probation department, the record is sufficiently clear that the trial court placed Packer on probation during the suspended portion of her sentence.

■ Before a trial court may revoke a defendant's probation, the State must prove a violation of probation by a preponderance of the evidence. Ind.Code § 35–38–2–3(e). According to the statutes defining probation, "[i]f the person commits an additional crime, the court may revoke the probation." Ind.Code § 35–38–2–2(b). When reviewing the sufficiency of the evidence to support a probation revocation, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Cox v. State,* 706 N.E.2d 547, 551 (Ind.1999), *reh'g denied.* Rather, we look only at the evidence most favorable to the State. *Id.* If there is substantial evidence of probative value to support the trial court's finding that a probation violation occurred, then we must affirm the trial court's decision. *Id.*

■ Here, the State alleged that Packer violated her probation by committing invasion of privacy as a class A misdemeanor. To support that charge, the State produced a certified docket sheet that indicated that Packer had pleaded guilty to invasion of privacy on August 23, 2001. This evidence is sufficient to support the trial court's finding that Packer violated her probation. *See, e.g., Williams v. State,* 695 N.E.2d 1017, 1019 (Ind.Ct. App.1998) (holding guilty plea from another state, under which defendant was not required to admit guilt, was sufficient to support a trial court's revocation of probation).

For the foregoing reasons, we affirm the judgments of the trial court.

Affirmed.

FRIEDLANDER, J., and NAJAM, J., concur.