Arnetia **SEALS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 09A02–0505–CR–374.**

Court of Appeals of Indiana.

May 10, 2006.

Jurisdiction retained; remanded.

James T. Knight, Cass County Public Defender, Logansport, for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Arnetia Seals pled guilty to one count of class B felony dealing in cocaine and received an executed sentence of eight years. Seals's public defender, who has since withdrawn his appearance, filed a brief pursuant to this Court's decision in *Packer v. State*, 777 N.E.2d 733 (Ind.Ct.App.2002), raising several "possible" issues for appeal. Appellant's Br. at 1. We remand for appointment of replacement counsel and rebriefing.

### Issue

The issue before us is whether Seals's brief fulfills the requirements of *Packer*.

### Facts and Procedural History

On October 23, 2003, in cause number 09D02–0307–FB–35, the State charged Seals with one count of class B felony dealing in cocaine. At the initial hearing on December 11, 2003, the trial court appointed a public defender to represent Seals. Seals subsequently retained counsel, who entered his appearance on March 1, 2004. At a hearing on February 3, 2005, Seals pled guilty as charged pursuant to an agreement that capped the executed portion of her sentence at eight years, with any probationary period to be left to the trial court's discretion. Appellant's App. at 80. In return, the State agreed to dismiss "all counts" of the information filed in cause number 09D01–0307–FB–17.[1] *Id.* Seals admitted to selling cocaine to either Kristy Edmondson or Cheryl Wooten on January 15, 2003. Tr. vol. 2 at 9.[2] The trial court took the plea under advisement and set the matter for sentencing.

At the sentencing hearing on March 8, 2005,[3] Seals's counsel called as a witness Sharon Johnston, the probation officer who prepared the presentence investigation report. Johnston recommended that Seals serve the executed portion of her sentence on home detention because she had no prior felony or misdemeanor convictions and because she has a medical condition that caused her to become legally blind.[4] Tr. vol. 1 at 6. Johnston testified that Seals was receiving social security disability ben-

---

1. The exact nature of the counts is unknown, although the record suggests that Seals was charged with four additional counts of dealing in cocaine.

2. In establishing the factual basis, the State failed to elicit testimony regarding the weight of the cocaine sold. The record indicates that the cocaine weighed 0.45 grams. *See* Tr. vol. 1 at 14 (Seals's counsel: "This is a case where [Seals] stands before you convicted by her plea of being involved in a transaction for fifty dollars for .45 grams."). Dealing in co-

caine is a class A felony if "the amount of the drug involved weighs three (3) grams or more[.]" Ind.Code § 35–48–4–1(b).

3. The sentencing hearing transcript mistakenly shows the date as May 8, 2005.

4. Seals suffers from bilateral optical atrophy and has only peripheral vision. Appellant's App. at 66 (presentence investigation report); Tr. vol. 1 at 8 (Seals's testimony).

efits and needed treatment that she would be unlikely to receive in prison. *Id.* at 7.

The State called Cass County Sheriff's Detective Jeffrey D. Schnepp, who had investigated Seals for over two years. Over objection, Detective Schnepp opined that Seals was likely to reoffend because her "entire family was involved in cocaine trafficking" and therefore home detention would be inappropriate. *Id.* at 9–10. Detective Schnepp acknowledged that he had arrested Seals for "five different incidences [sic] of cocaine dealing." *Id.* at 10. The trial court clarified that Seals was being prosecuted only for one class B felony charge and stated, "[T]hat's the only thing the Court is going to consider." *Id.* When asked about the appropriateness of home detention for Seals, Detective Schnepp testified over objection, "I believe with all these trafficking [sic] we had on her, I don't believe in home is appropriate, personally." *Id.* Seals's counsel moved to strike and stated, "Once again, your Honor has already made a ruling that you're not going to consider things she's charged with and were dismissed." *Id.* The court responded, "I am considering things that she's been · charged with but my record shows that she has been charged with one count of dealing in cocaine, is that correct?" *Id.* When Seals's counsel responded in the affirmative, the court stated, "Okay, I understand what [your] objection is. I don't know that it relates to the opinion that he's given or I do understand what your objection is." *Id.* at 11.

In closing, Seals's counsel pointed out that Seals had been convicted "of being involved in a transaction for fifty dollars for .45 grams" of cocaine. *Id.* at 14. He noted that Seals had no prior criminal history, had pled guilty, and was "legally blind and needs treatment for the blindness which she cannot receive at the Indiana Women's Prison." *Id.* Seals's counsel referred to Johnston's recommendation for home detention and stated that "that would be the appropriate sentence[,]" without suggesting a specific term. *Id.*

The State argued that Seals had already received "a mitigated plea for pleading guilty" and noted that she had been "charged with five different sales of cocaine." *Id.* The State observed that blindness "is not a statutory mitigator" and that no evidence had been presented that the Indiana Women's Prison could not take "care of [Seals's] physical infirmities." *Id.* at 15. The State mentioned Detective Schnepp's "opinion on giving home detention to convicted drug dealers[,]" noted that the presumptive sentence for a class B felony is ten years, and asserted that Seals "deserves eight years in the Department of Corrections and two years probation. That will get her to the ten years." *Id.*[5]

The trial court pronounced sentence as follows:

Well, the Court as I said is going to consider one case and that's the one that I have before me and the plea agreement that was presented before me and I do accept the plea agreement as tendered by the parties in this cause of action. And, Arnetia, based upon the plea agreement. The range that I have available to me, I am sentencing you to eight years in the Department of Corrections. Eight years is a mitigated

---

**5.** At this point, the trial court asked the State, "Why did you offer the plea of eight as opposed to something different? Up to twenty? If you had all these cases allegedly pending against her? Are they bad cases or they—did you [give] consideration for ...[.]" Tr. vol. 1 at 15. The State responded, "I gave her consideration for her record and I gave her consideration for pleading guilty." *Id.* Seals's counsel stated, "I would further add, Judge, they are bad cases. There are problems with these cases." *Id.*

sentence for what you've been pled—what you pled guilty for. And that will be the sentence of the Court.

*Id.* at 16. The court informed Seals of her right to appeal her sentence and told her to notify the court if she desired "to have appointed counsel to appeal the sentencing in this cause of action." *Id.* at 17.

On March 18, 2005, Seals's counsel filed a motion to withdraw his appearance and a request for appointment of pauper counsel, both of which the trial court granted. On April 4, 2005, a public defender filed a notice of appeal on Seals's behalf. On April 29, 2005, the public defender filed an appellant's case summary in which he listed the following anticipated issues on appeal: "Whether the factual basis entered supports the judgment of guilty; whether the Defendant was appropriately advised of her rights prior to entering a plea; whether any *Blakely* or other sentencing errors were committed, all to be determined from the record of proceedings."

On August 11, 2005, the public defender filed a Report to the Appellate Court that states in pertinent part,

5. That Counsel for Appellant has exhaustively reviewed the record of proceedings in the instant case, applicable case law, and the Rules of Appellate Procedure;

6. That after said review of the record, it is the opinion of Appellate Counsel that there is no basis for appeal in the instant case, as the sentence rendered by the Trial Court is based on a sound factual basis, the defendant was properly advised of her rights prior to entering a plea, no *Blakely* issues or other sentencing irregularities are present, the sentence in the instant case

does not appear to conflict with decisions of the Court of Appeals, Supreme Court, or Federal Appellate decisions, the matter at hand does not include an undecided question of law, the matter in the instant case does not present a precedent in need of reconsideration, nor does the decision of the Trial Court present a significant departure from law or practice.

7. As a result of all the foregoing, Appellate Counsel cannot in good conscience further pursue an appeal that Counsel believes would be a frivolous filing, and therefore respectfully makes this Report to the Court indicating that while the Defendant previously requested an appeal in this matter, Appellate Counsel finds no basis for same, and cannot therefore in good conscience further pursue same.

On August 26, 2005, this Court issued an order stating that the public defender's report did not comply with the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in *Packer*, 777 N.E.2d 733, and directing the public defender to file a brief "as described in the *Packer* case" within thirty days. On September 22, 2005, this Court issued an order granting the public defender additional time to file a brief.[6]

On November 28, 2005, the public defender filed a brief and a motion to withdraw his appearance. On December 13, 2005, this Court issued an order approving the public defender's brief and granting his motion to withdraw. The State filed its brief on February 20, 2006.

### Discussion and Decision

In the brief he filed on Seals's behalf, the public defender raises the following "possible arguments":

---

6. On September 15, 2005, another attorney entered a limited appearance on Seals's behalf for the purpose of filing a motion for extension of time. This appearance was withdrawn on January 20, 2006.

[T]he Defendant could attempt to argue that the Trial Court committed reversible error by sentencing the Defendant in a fashion inconsistent with the Court's decision in *Blakely v. Washington* [, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),] and Indiana Case *Smylie v. State* [, 823 N.E.2d 679 (Ind. 2005), *cert. denied* ], however, Counsel's reading of these cases, and subsequent cases which they spawned, does not lead Counsel to believe that this is an argument which would bear fruit.

As well, after conscientious examination, Counsel does not believe that the Trial Court committed reversible error by taking in opinion testimony of the Detective as to the appropriateness of the way in which Defendant would serve her sentence at the sentencing hearing. Finally, Defense Counsel does not appear to have been inadequate, as Counsel was functioning, put exhibits into evidence on Defendant's behalf, raised objections, and called witnesses on Defendant's behalf.

Counsel for Appellant respectfully submits this Brief in conjunction with this Motion to Withdraw in a good faith attempt to comply with this Court's previous orders of August 26, 2005 and September 22, 2005, and in accordance with the Court's decision in *Packer v. State*, 777 N.E.2d 733 at 736–738 (Ind. App.2002).

Appellant's Br. at 5–6. We acknowledge that the motions panel of this court has already approved the public defender's brief, but after full consideration of the record before us, we must conclude that his attempt to comply with *Packer* has fallen short of its intended goal.[7]

In *Packer*, we addressed sua sponte appellate counsel's statement that he was "unable to construct a non-frivolous argument" that the trial court erred in finding the appellant to be in contempt of court and in revoking her probation and that "a prayer for relief seem[ed] out of place." 777 N.E.2d at 736. We remarked, "There is nothing to indicate that counsel at anytime consulted with Packer or advised her of the positions that would be taken in the brief." *Id.* We further stated,

Although matters of attorney discipline do not fall within our jurisdiction, pursuant to Ind. Appellate Rule 4(B)(1)(b), we feel that it is incumbent upon us to explain why counsel's decision to submit such a brief concerns us and to suggest an alternative approach that counsel should take in the future in such a situation.

First, Indiana's Rules of Professional Conduct for Lawyers require a lawyer to provide competent representation to his clients. Ind. Prof. Conduct Rule 1.1. The Comment to that rule explains: "A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person." Our supreme court has previously explained that an "appellate attorney has an obligation, both to his client and this court to see that the issues raised are suitably argued." *Dortch v. Lugar*, 255 Ind. 545, 588, 266 N.E.2d 25, 50 (1971), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind.1994). In Packer's brief, counsel raised two issues and then explained that the trial court did not err on either

---

**7.** *See State v. Moore,* 796 N.E.2d 764, 766 (Ind.Ct.App.2003) ("Even though the motions panel of this court has already ruled upon this issue, we may reconsider that ruling."), *trans. denied* (2004).

one. Such explanations are not suitable arguments *for* a client.

Second, the Comment to another of the Ind. Professional Conduct Rules requires a lawyer to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Comment to Ind. Prof. Conduct Rule 1.3.[8] If an attorney cannot protect the interests of his client to the best of his ability, he should "withdraw from the case." *Sims v. State*, 246 Ind. 660, 667, 208 N.E.2d 469, 472 (1965), *cert. denied*, 384 U.S. 922 [86 S.Ct. 1374, 16 L.Ed.2d 442] (1966); *see also State ex rel. White v. Hilgemann*, 218 Ind. 572, 579, 34 N.E.2d 129, 131 (1941) (holding that indigent defendant had right to appointed appellate counsel and, in the process, stating that "if competent counsel finds no substantial error to assign upon appeal, and so advises the defendant and the trial court, the constitutional requirement is satisfied and the defendant may not demand that the trial court find and appoint other counsel who will advise an appeal"). By filing a brief that includes the language cited above, counsel has neither acted with dedication to the interests of Packer nor advocated with zeal on Packer's behalf.

We recognize that, by stating that he could make no nonfrivolous argument, counsel displayed "Candor Toward the Tribunal" as required by Ind. Professional Conduct Rule 3.3. In addition, we recognize the difficult ethical challenge that may face public defenders in some situations, when they must balance the requirement of advocating with zeal on behalf of their clients with the requirements of candor and bringing meritori-ous claims. However, the balance struck by counsel appears to us to have been inappropriate, as counsel avoided a frivolous appeal by failing to advocate for his client while continuing to represent her.

A better balance for counsel to strike would be to follow the dictates of *Anders v. California*, 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (1967), *reh'g denied*, and *Penson v. Ohio*, 488 U.S. 75, 82 [109 S.Ct. 346, 102 L.Ed.2d 300] (1988). As set forth in *Anders*:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae ... Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a deci-

---

**8.** The comment no longer requires a lawyer to act "with zeal in advocacy upon the client's behalf." *See* Ind. Professional Conduct Rule 1.3, cmt. 1 (West 2006). We find this amendment inconsequential for purposes of our analysis.

sion on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders v. California,* 386 U.S. at 744 [87 S.Ct. 1396] (footnote omitted).

While *Anders* and *Penson* discuss an appellant's right to appellate counsel under the federal constitution, we uncovered no caselaw suggesting that appellant's counsel filing an *Anders* brief would be inappropriate under the Indiana Constitution. *See, e.g., Petition of Stillabower,* 246 Ind. 695, 696–697, 210 N.E.2d 665, 665–666 (1965) (holding that the public defender was not required to represent the petitioner in post-conviction proceedings when there were no meritorious grounds for relief); *In re Harvey,* 247 Ind. 23, 210 N.E.2d 859 (1965) (holding that public defender did not have to represent petitioner in post-conviction proceedings when there were no meritorious issues to present); *Hilgemann,* 218 Ind. at 579, 34 N.E.2d at 131 (noting that indigent defendant has no right to appellate counsel if there are no meritorious issues to advance on appeal). Consequently, if defense counsel are faced with a similar situation in the future, we suggest that they try an alternative approach to avoid violating their professional responsibilities to both this court and their clients.

*Id.* at 736–38 (footnote and some parallel citations omitted).

Here, as the State points out, Seals's public defender "did not even attempt to

advocate for his client on any of the recognized issues by presenting legal authority, and because he failed to present a cogent argument, [Seals] can be deemed to have waived all of the issues on appeal." Appellee's Br. at 5–6. The State further observes:

Counsel merely stated that the three issues had no merit and did not develop those issues any further. In two of the three issues, those being ineffective assistance of counsel and the admission of opinion testimony, the State is unable to determine the nature of any error alleged on appeal. The State on appeal has therefore no issues to respond to and is unable to file a Brief of Appellee on the merits at this time.

*Id.* at 6. We agree with the State's assessment of the public defender's brief and conclude that the perfunctory "possible arguments" demonstrate a lack of commitment and dedication to his client.

Even more troubling, there is no indication that the public defender ever furnished Seals with a copy of the brief or that Seals, who is incarcerated and legally blind, was given an opportunity to raise any issues of her choosing. *See Anders,* 386 U.S. at 744, 87 S.Ct. 1396; *Packer,* 777 N.E.2d at 736. Also, the public defender incorrectly asserts that Seals was charged in this case with four counts of dealing in cocaine. Appellant's Br. at 1–2. Finally, as the State observes, the public defender failed to raise the "facially obvious issue" of the appropriateness of Seals's eight-year executed sentence pursuant to Indiana Appellate Rule 7(B).[9] Appellee's Br. at 5 n. 3.

---

**9.** *See* Ind. Appellate Rule 7(B) ("The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."). There is currently a split of opinion on this Court regarding whether a defendant who agrees to be sentenced within a limited range or under a certain cap waives any challenge

In sum, the public defender's brief does not fulfill the requirements of *Packer.* We therefore remand with instructions to appoint replacement counsel for Seals within thirty days of this decision. Counsel will be given ninety days from the date of appointment to review the record on appeal, consult with Seals, and file a new brief on her behalf. Rebriefing will then proceed according to the filing deadlines of Appellate Rule 45(B). We retain jurisdiction of this case.

Remanded.

KIRSCH, C.J., and BAILEY, J., concur.

to the appropriateness of his sentence under Appellate Rule 7(B). *Compare Gornick v. State,* 832 N.E.2d 1031, 1035 (Ind.Ct.App. 2005) ("[W]hen a plea explicitly permits the trial court to sentence a defendant within a set range and is not 'open,' the defendant waives his right to the inappropriate sentencing standard. The logic supporting a fixed plea's waiver of the inappropriate sentencing standard is that, although a trial court may abuse its discretion in weighing the aggravators and mitigators supporting a sentence within the range set forth by a fixed plea, a defendant would not agree to a sentencing range that would be so unjust as to be characterized as 'inappropriate.' ") (citation and footnote omitted), *trans. denied, with Nguyen v. State,* 837 N.E.2d 153, 159 (Ind.Ct.App. 2005) ("Where a plea agreement provides for a sentence within a certain range or under a certain cap, I do not believe that the defendant necessarily agrees that any sentence within that range or any sentence up to and including the cap is appropriate. Rather, I believe that in most circumstances the defendant is agreeing only that a sentence within the bounds of the plea agreement is legal.") (Robb, J., concurring in result). In this case, Seals agreed to a cap on the executed portion of her sentence but left the extent of any probationary period to the trial court's discretion. Absent a final word on the subject from our supreme court, we believe that appellate counsel may justifiably challenge the appropriateness of a sentence where the defendant has agreed to certain sentencing limitations.