## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 02 2015, 10:52 am

CLERK
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Michael H. Michmerhuizen
Barrett & McNagny LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Thomas C. Allen
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Marriage of:

Dedra L. Fisher,

*Appellant-Petitioner,*

v.

Terry L. Fisher,

*Appellee-Respondent*

March 2, 2015

Court of Appeals Case No. 02A03-1407-DR-258

Appeal from the Allen Circuit Court
The Honorable Thomas J. Felts, Judge
The Honorable John D. Kitch III, Magistrate
Cause No. 02C01-0008-DR-665

**Bradford, Judge.**

# Case Summary

Appellant-Petitioner Deedra Fisher ("Wife") and Appellee-Respondent Terry Fisher ("Husband") (collectively "the parties") divorced in 2001. The parties

have two children, a son and daughter. The parties executed a Property Settlement Agreement ("PSA") which determined distribution of the marital assets and debts and established Husband's child support obligations. In 2013, Wife filed a motion requesting the trial court hold Husband in contempt for failure to comply with certain provisions of the PSA. The trial court found that Husband had overpaid his child support obligation by $17,582.00 but had failed to pay Wife for several other obligations as required by the PSA. The trial court awarded Wife a money judgment with regards to the personal property obligations and allowed the child support overpayments to be credited against prior unpaid childcare expenses and the daughter's future college expenses.

[2] On appeal, Wife argues that the trial court erred by (1) declining to find Husband in contempt, (2) misinterpreting the PSA regarding what Husband was obligated to pay, (3) crediting Husband's child support overpayments toward future college expenses, and (4) not awarding Wife attorney's fees. We affirm the trial court's determination on the issues of contempt, PSA interpretation, and overpayment crediting. However, we reverse the trial court's ruling not to award attorney's fees to Wife.

# Facts and Procedural History

[3] On August 21, 2001, the parties executed the PSA. On August 23, 2001, the parties' marriage was dissolved and the PSA was incorporated into the trial court's dissolution decree. According to the PSA, Husband was responsible for paying (1) $210.00 per week in child support, (2) "one half (1/2) of the annual

school registration fees[,]" (3) one-half of any orthodontic expenses, (4) the balance of a loan for Husband's truck ("the truck debt"), (5) $9855.77 to Wife for personal obligations on which Husband was in arrears, and (6) the balances due on several accounts including Discover, Target, AT&T, Best Buy, and Marathon credit cards ("Credit Card Debts"). Appellant's Ex. 1 The PSA also provided for the division of real estate equity and debt as follows:

> **E. Personal Property Settlement For Husband:**
>
> * * *
>
> h. It is further agreed that Husband shall assume and pay, and shall hold Wife harmless from the payment of one-half of the outstanding indebtness on the second mortgage on a monthly basis which shall be paid at the rate of Forty-Two and 59/100 Dollars ($42.59) per week through a voluntary Wage Assignment.
>
> **F. Division of Real Estate Equity.**
>
> Parties agree that certain real estate in their joint names … shall be held in the sole possession of Wife. Husband shall transfer any and all interest he may have in said property to Wife by Quit Claim Deed. Wife shall list said property for sale and/or refinance said property. The sale or refinance of the marital residence shall be done as expeditiously as possible with progress reports of offers, showings or mortgage applications being provided to Husband every thirty (30) days. Until such time as the property is sold or refinanced, [H]usband and [W]ife shall each be responsible for 50% of both the first and second mortgages.

Appellee's App. p. 18-19.

[4] After the income withholding order ("IWO") was made effective pursuant to the PSA terms, Husband moved to Florida to live with his parents because he could not afford to live on his own. Husband admitted that, following the finalization of the divorce, he did not pay the truck debt or several of the Credit

Card Debts pursuant to the PSA because he did not have the money to do so. Wife paid the outstanding truck debt and the AT&T credit card balance. Wife refinanced the marital home on October 22, 2001. Husband did not pay on the second mortgage because he did not think it was necessary once the house was refinanced.

[5] Sometime prior to June of 2008, Husband became aware that he had been overpaying his child support obligation for several years and subsequently called the child support office to inquire about the overpayments. On June 18, 2008, the trial court entered an order finding that Husband had overpaid his child support obligation by $13,255.01 and entered a new IWO. On October 10, 2012, Husband filed a petition for emancipation regarding the parties' son and for modification of child support. On October 26, 2012, Wife filed a motion requesting Husband contribute to the daughter's college expenses. On May 13, 2013, the trial court granted Husband's request for emancipation, ordered the parties to share in funding the daughter's college education, and determined that Husband had overpaid his child support obligation by $16,849.00. On June 4, 2013, Wife filed a petition for rule to show cause requesting the trial court hold Husband in contempt for failing to comply with the PSA. Specifically, she alleged that Husband failed to pay orthodontic and school expenses, the truck and AT&T debt, half of the second mortgage, and the $9855.77 arrearage. Husband was unaware of the children's orthodontia services or school registration fees until after Wife's June 4, 2013 petition for

contempt was filed. On October 2, 2013, Husband filed a motion for emancipation regarding the parties' daughter and termination of child support.

[6] On April 14, 2014, the trial court held a hearing on Wife's petition for show cause and Husband's petition for emancipation and termination of child support. In its subsequent order, the trial court held as follows: (1) the daughter was emancipated for child support purposes and the IWO was terminated; (2) Husband had overpaid child support in the amount of $17,582.00; (3) Husband could not be held in contempt for failing to pay $9855.77 to Wife (as required by the PSA) because it was a money judgment not enforceable through contempt; (4) Husband owes Wife $2440.00 for the truck debt; (5) Husband owes Wife $481.25 for the AT&T credit card debt, (6) pursuant to paragraph E(1)(h) and Section F of the PSA, Husband owes Wife $183.13 on the second mortgage of the marital home ($42.59 for each week after the PSA was executed and prior to the refinancing of the home), (7) Husband owes Wife $2582.00 for orthodontic expenses, (8) the PSA only required Husband to pay for "corporate fees" (totaling $407.69) and not books or consumables, and (9) Husband did not comply with the terms of the PSA but was not in contempt because, among other things, his noncompliance was due to a financial inability. The trial court clarified that the $9855.77 arrearage obligation from the PSA, and the additional $3104.39 owed to Wife (total for truck debt, AT&T debt, and second mortgage), were money judgments not in the nature of child support and as such were collectable through the attachment process and not enforceable by contempt. The unpaid orthodontic fees and school expenses

were credited to Husband's child support overpayment leaving a total credit of $14,592.31, which would be applied to the daughter's future college expenses.

# Discussion and Decision

Wife makes four contentions on appeal: (1) the trial court erred in declining to find Husband in contempt for noncompliance with the PSA; (2) the trial court improperly calculated the amounts Husband owes for school expenses and on the second mortgage; (3) the trial court erred in crediting Husband's child support overpayments toward future college expenses; and (4) the trial court erred in not awarding Wife attorney's fees.

# I. Contempt

> The determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court. *Jackson v. State*, 644 N.E.2d 607, 608 (Ind. Ct. App. 1994), *trans. denied*. We will reverse the trial court's determination only if the court has abused its discretion. *Id*. A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law.

*Williams v. State ex rel. Harris*, 690 N.E.2d 315, 316 (Ind. Ct. App. 1997). "Upon review, we neither reweigh the evidence nor judge the credibility of the witnesses." *Piercey v. Piercey*, 727 N.E.2d 26, 29 (Ind. Ct. App. 2000).

"To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with 'willful disobedience.'" *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000) (quoting *In re Marriage of Glendenning*, 684 N.E.2d 1175, 1179 (Ind. Ct. App. 1997), *trans. denied*). The

trial court possesses unique knowledge of the parties before it and is in the best position to determine whether a party's disobedience of the order was done willfully. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 203 (Ind. 2012).

[10] Generally, money judgments are not enforceable by contempt. *Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993). Although contempt may not be used to enforce a *fixed* money judgment, it is an available remedy for noncompliance with a dissolution decree that creates non-fixed monetary obligations. *Mitchell v. Mitchell*, 871 N.E.2d 390, 395 (Ind. Ct. App. 2007). Contempt is also an option to assist in the enforcement of child support orders when the trial court finds that the delinquency in payment was the result of (1) a willful failure by the parent to comply with the support order and (2) that the delinquent parent has the financial ability to satisfy his or her support obligation. *Id.*

[11] Wife concedes that the $9855.77 amount contemplated by the PSA is a fixed money judgment not enforceable by contempt. However, she argues that (1) the unpaid property debts (AT&T debt, truck debt, and second mortgage) are non-fixed money judgments enforceable by contempt and (2) the unpaid orthodontic and school expenses are childcare related and thus enforceable by contempt. Husband concedes that the personal property debts are not fixed money judgments and so may be enforced through a contempt order. However, as Husband notes, the trial court also determined that Husband did not breach the PSA willfully. As it relates to the truck debt, AT&T debt, and second mortgage, Husband's breach was a result of a financial inability to make payments following the dissolution. As it relates to the orthodontic and school

expenses, Husband's breach was not willful both because he was not informed of the expenses and because his substantial overpayment of child support far exceeded these child-related expenses. The parties disagree as to whether Husband's breach was willful; however, this was a factual determination on which the trial court issued findings. As such, we will not reweigh the evidence. *Piercey*, 727 N.E.2d at 29.

[12] Even if we assume Husband breached the PSA willfully, Wife's argument still fails. The language of *Mitchell* informs us that contempt *may* "be used to enforce compliance with a property settlement agreement incorporated into a dissolution decree," it does not require a trial court to do so. *Mitchell*, 871 N.E.2d at 395. "[I]t is within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of the court's order." *Williamson v. Creamer*, 722 N.E.2d 863, 867 (Ind. Ct. App. 2000) (quoting *Bechtel v. Bechtel*, 536 N.E.2d 1053, 1056 (Ind. Ct. App. 1989)). The trial court was not obligated to find Husband in contempt; rather, it chose to enter money judgments in favor of Wife for the truck debt, AT&T debt, and second mortgage payments, which allows Wife to pursue the collection of those debts through Indiana Trial Rule 69. Because Wife has now received a money judgment to remedy Husband's noncompliance with the PSA, it is unclear what she stands to gain by having Husband declared in contempt.

## II. Calculation of Husband's Obligations

[13] Wife argues that the trial court erred in its interpretation of the terms of the PSA.

> Settlement agreements become binding contracts when incorporated into the dissolution decree and are interpreted according to the general rules for contract construction. Unless the terms of the agreement are ambiguous, they will be given their plain and ordinary meaning. Interpretation of a settlement agreement, as with any other contract, presents a question of law and is reviewed de novo.

*Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008) (citations omitted).

## A. Second Mortgage

Section F of the PSA provides that "[u]ntil such time as the property is sold or refinanced, [H]usband and [W]ife shall each be responsible for 50% of both the first and second mortgages." Appellee's App. p. 19. Section E(1)(h) provides that "Husband shall assume and pay, and shall hold Wife harmless from the payment of one-half of the outstanding indebtness on the second mortgage on a monthly basis which shall be paid at the rate of Forty-Two and 59/100 Dollars ($42.59) per week through a voluntary Wage Assignment." Appellee's App. p. 18. The trial court read these provisions together and determined that Husband was responsible for payments pursuant to Section E(1)(h) for the period after the August 23, 2001 dissolution, and prior to the October 22, 2001 refinancing of the home.[1]

---

[1] Although Wife did not raise this issue, we note that the trial court erred in calculating the amount Husband owes on the second mortgage. The trial court improperly calculated Husband's monthly payments to be "$183.13 ($42.59 x 4.3 equals $183.13 per month times two months equals $366.27 times 50% equals $183.13)." Appellant's App. p. 16. The weekly payments of $42.59 were not intended to be split by the parties but reflected only Husband's share of the mortgage. Therefore, the total amount Husband owes Wife for the second mortgage should be $366.27.

Wife contends that these two provisions should be read separately, *i.e.* that Husband was obligated to make weekly payments of $42.59 on the second mortgage even after the home was refinanced. We find this to be an illogical reading of the PSA. It would make little sense for Husband to continue making payments on a mortgage that no longer exists. We think that the voluntary wage assignment for $42.59 contained in Section E(1)(h) provided a specific means of ensuring that Husband made payments toward the second mortgage consistent with the obligations of Section F, thus allowing Wife to avoid the risk of Husband's share of the second mortgage going unpaid prior to refinance or sale. Additionally, we note that any perceived ambiguity regarding a contract must be construed against the drafter, which was Wife in this instance. *Rogers v. Lockard*, 767 N.E.2d 982, 990 (Ind. Ct. App. 2002).

## B. School Expenses

The PSA states that "[t]he Husband shall also be responsible for one half (½) of the annual school registration fees." Appellee's App. p. 15. In Exhibit 6, Wife outlines the children's various school expenses, which are separated into three categories: books, consumables, and corporate fees. The trial court noted that the term "school registration fees" was not defined in the PSA. The trial court found that "registration fees" included "corporate fees" and did not include books or consumables.

"If a contract is ambiguous or uncertain, its meaning is determined by extrinsic evidence and its construction is a matter for the fact-finder. An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable

persons would differ as to its meaning." *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1097 (Ind. Ct. App. 2013) (citations omitted). Because the term "annual school registration fees" is not defined in the PSA and is susceptible to more than one interpretation, we find it to be ambiguous.

Aside from Wife's brief testimony generally describing the school registration process, neither party provided any extrinsic evidence to assist in the interpretation of the ambiguous term. We think that a common-knowledge interpretation of "school registration fee" would contemplate a flat fee required to enroll in a school and would not typically include additional expenses such as books, meals, boarding, or other class materials. Without any evidence to the contrary and considering that the PSA must be construed against Wife as drafter, we find that the trial court's interpretation of the PSA was reasonable.

## III. Crediting Overpaid Child Support Payments Against Other Childcare Obligations

Wife claims that the trial court erred by crediting Husband's overpayment of child support against the amounts owed for unpaid orthodontic and school expenses, as well as any future college expenses. In support of this claim, Wife argues that "child support payments cannot be applied prospectively to support not yet due at the time of the overpayment." *Drwecki v. Drwecki*, 782 N.E.2d 440, 448 (Ind. Ct. App. 2003) (quoting *Matson v. Matson*, 569 N.E.2d 732, 733 (Ind. Ct. App. 1991)). However, Wife neglects to mention that this rule only applies to *voluntary* overpayments, not overpayments made by virtue of mistake

or as a result of an inaccurate support order (both of which were reasons for Husband's overpayment).

[20] In *Drwecki*, we addressed this rule in a situation where a father was making child support payments pursuant to a court order which was later modified retroactively. The court found that the father could recover the overpayments from the mother. *Id.* at 449.

> In previous cases, we have held that "child support payments cannot be applied prospectively to support not yet due at the time of the overpayment." [*Matson,* 569 N.E.2d at 733].
>
> > The rationale behind the rule is that it would be unjust for a non-custodial parent to *voluntarily* build up a substantial credit and then suddenly refuse to make support payments for a period of time. This would thwart the court's purpose of providing regular, uninterrupted income for the benefit of the children. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.
>
> *Id.* This rule suggests that Father cannot receive credit against future support payments.
>
> However, the rationale underlying this rule does not fully apply here, where Father did not voluntarily build up a substantial credit. Rather, Father built up a substantial credit because he followed the court's previous order that required him to pay $241 per week in child support. If Father had failed to make those payments until the court modified the order, the trial court might have found him in contempt.
>
> * * *
>
> For all these reasons, we hold that Father should be able to recover the overpayments that Mother received.

*Id.* at 448-49 (emphasis added).

In the instant case, the trial court was within its discretion to offset Husband's overpayments with the children's prior childcare expenses and daughter's future college expenses. It is unclear why Wife is opposed to this arrangement when the trial court could have ordered her to reimburse Husband for the entire overpayment amount minus the prior orthodontic and school expenses.

## IV. Attorney's Fees

The PSA provides that "[e]ach party agrees to indemnify and save and hold the other harmless from all damages, losses, expenses (including attorney fees), costs, and other fees incurred by reason of the other's violation or breach of any of the terms and conditions hereof." Appellee's App. p. 20. Wife argues that Husband's admission to not paying certain obligations under the PSA amounts to an admission of a breach and, therefore, that the trial court erred in failing to award attorney's fees pursuant to the attorney fee provision. We agree. By his own admission Husband violated the terms of the PSA. Additionally, Husband provided no argument as to why this provision should not be enforced as written. Accordingly, we reverse the trial court's decision not to award attorney's fees and remand for a determination of the appropriate amount of attorney's fees to which Wife is entitled.

## Conclusion

We reverse and remand with orders that the trial court (1) recalculate the amount Husband owes for the second mortgage consistent with our reasoning in footnote 1, and (2) determine the amount of attorney's fees to which Wife is

entitled. We affirm the judgment of the trial court with respect to all other issues discussed herein.

[24] Affirmed in part, reversed and remanded in part.

Najam, J., and Mathias, J., concur.